[Civil No. 1598.   Filed June 15, 1918.]

[173 Pac. 350.]

PEDRO DURAZO, Appellant, v. ALFREDO DURAZO, SR., Appellee.

1. TRUSTS — CONVEYANCE FOR SPECIAL PURPOSE — SUFFICIENCY OF EVIDENCE.—In a son's action to set aside his conveyance to his father of his share of his deceased mother's estate on the ground that the deed was not intended as a conveyance absolute, but as a conveyance of the legal title to be held by the father to deal with the property, with a promise to account, evidence *held* insufficient to sustain the son's allegations.

   [As to creation of trust in land by parol, see note in 115 Am. St. Rep. 774.]

2. LIMITATION OF ACTIONS—STATUTE OF LIMITATIONS—FRAUD OR MISTAKE.—Where a father, by the exercise of duress, procured conveyance from his son of the latter's share in his deceased mother's estate, and thereafter, as early as October 19, 1912, the son demanded his share, with full knowledge of his rights, and was met with a refusal, the father putting him out of the house, the son's action to cancel the deed for duress was barred when commenced March 27, 1916, by Civil Code of 1913, paragraph 711, subdivision 3, providing that action for relief on the ground of fraud or mistake must be commenced within three years after the cause of action

accrued, since the son's cause of action accrued when he left his father's house, escaping from his duress, with knowledge of his rights.

APPEAL from a judgment of the Superior Court of the county of Pima. W. A. O'Connor, Judge. Affirmed.

Mr. Francis M. Hartman, and Mr. R. W. Sprague, for Appellant.

Mr. John H. Campbell and Mr. George O. Hilzinger, for Appellee.

CUNNINGHAM, J.—Appellant commenced this action alleging that prior to February 16, 1911, his mother died intestate, leaving surviving her husband, plaintiff's father, the defendant, and plaintiff and other children; that deceased at the time of her death left an estate consisting of her community interest in real and personal property; that an undivided one-twelfth portion of his said mother's estate so left vested in the plaintiff as one of her heirs at law; that on said sixteenth day of February, 1911, plaintiff's father presented a deed to plaintiff and demanded of plaintiff that plaintiff sign such deed and informing plaintiff that the purpose of the deed was to convey plaintiff's interest in said estate to the defendant so that defendant could handle the property with greater ease, but that said conveyance would be used for no other purpose, and that he, defendant, would hold this plaintiff's interest in and to all of said property in trust for plaintiff, and that plaintiff would still really be the owner of his share and interest in and to all of the said property; "that, owing to the relationship existing between plaintiff and defendant, plaintiff was at the time of making said purported conveyance practically under the power, influence, dominion, and control of defendant, and plaintiff also relied upon the said representations of defendant aforesaid, and made such conveyance by reason of such influence, dominion, and control so exercised by defendant, and in reliance upon such representations"; that no (other) consideration was received by plaintiff for said conveyance; that plaintiff was not informed as to his legal rights at the time he made such conveyance. The remaining portions of the complaint describe

the property involved. Plaintiff alleges a demand for his share of the property and a refusal of such demand.

The relief demanded is a judgment establishing plaintiff's ownership of an undivided twelfth interest in the real estate, and a conveyance to him of that interest; also an accounting for the proceeds of certain sales of real estate; an accounting for the personal property; also an accounting for rents, issues, and profits; and for equitable general relief.

The defendant denies having made the representations alleged, and denies that undue influence, power, domination, or control were exerted over the plaintiff, or that plaintiff executed said deed because of such representations or any representations made by the defendant or because of any influence, domination, or control of defendant over plaintiff, and alleges "that the plaintiff, together with certain others of the children of defendant, freely and voluntarily executed and delivered unto the defendant the deed conveying to him all their right, title, and interest in and to the property described in the complaint because of the love and affection which plaintiff and said other children at that time bore to defendant." The defendant pleads in bar of the action several Statutes of Limitation, including paragraph 711, C. C. A. 1913.

At the close of the plaintiff's evidence, the defendant moved for judgment, and the plaintiff likewise moved for judgment. The court allowed defendant's motion and disallowed plaintiff's motion, and rendered judgment for the defendant for his costs.

By this action the plaintiff is seeking relief from the effect of his deed made and delivered on the sixteenth day of February, 1911, for two reasons: First, because the deed was not intended to operate as a conveyance absolute, but was intended to operate as a conveyance of the legal title to be held by the grantee for the purpose of dealing with the property in grantee's discretion, with a promise to account to the grantor for the same at some future time, and the grantee has refused to account after demand made therefor, and has expressly repudiated the trust; second, because the deed was procured without consideration by the exercise of undue influence, power, dominion, and control; that the grantor made and delivered the deed under duress, and the deed was therefore void.

The testimony wholly fails to sustain the first ground relied upon. All of the testimony in the record is that of the plaintiff. Testifying in chief and on cross-examination, he relates the circumstances under which the deed was executed and delivered by him, saying:

"Why, I started to eat, and my father came in and one of my sisters, and he had a paper in his hand. He told me to sign that paper because he didn't want to be chasing up and down after every one of us; that he had an important business to attend, and he wanted to attend to it himself. . . . (He handed witness the paper.) I started to read it, and he told me I had to go right back because he was short of cattle, and he wanted me to buy some fat cattle for him, so he says, 'You go ahead and sign right away,' he says, 'because you have to go right back,' and I did. Q. Why did you sign that deed? A. Because he made me. He told me he didn't want any of us mingling in his business."

Plaintiff in answer to this question, "Had he ever talked to you about it before that day?" answered:

"No, sir; he didn't. . . . Q. Did he say anything about what should become of the property afterwards? A. Not a thing."

The wildest flight of fantastic dreams cannot discern any shadow of an understanding that the father proposed to hold the property conveyed by the deed in trust for the use and benefit of the plaintiff's son. The theory of an express trust must be excluded for the reason of total failure of proof in support of its existence.

The plaintiff was 22 years of age at the time he made the deed. He had attended school both at his home town and in California. He had been working for his father, principally handling cattle and other duties about ranches for his father, and was so engaged at the time he made the deed. He relates circumstances occurring in the relation with his father which tended to cause one in a like situation to fear the father. The father's treatment of the son, as related by the son, was harsh and sometimes cruel and unjust. The son entertained such fear of his father that he dared not refuse any request or known wish of his cruel parent. The plaintiff, after testifying as above, was asked:

"Q. Did you ever speak to him afterwards about it (referring to the property)? A. Well, about a year after I

spoke to him.  Q. What did you say to him?  A. I told him,
I said, 'I haven't even clothes; you know I need some money;
I think I have a little money coming from my mother's share';
and then he cursed me and kicked me out of the house.''

Thereupon the plaintiff went away to California some time
in the year 1912, about six months before the nineteenth day of
October, 1912, and after about a year he returned to Arizona,
but has not been in the employ of his father since leaving for
California.  The plaintiff has married since his return to
Arizona.

Assuming that these circumstances are sufficient to justify
the inference that plaintiff was under the absolute control of
his father at the time he signed the deed, and the deed was
actually signed because of such control at the mere command
of the father, then at the time, about a year after the deed
was signed, the plaintiff requested money for clothes and
stated that he was entitled to a portion of his deceased mother's
estate, and his father denied plaintiff's interest in said estate,
and literally ' kicked'' plaintiff out of the house.  At said
time all of the wrongful control of the father over the son's
independent acts came to an end.  Plaintiff does not contend
in his testimony that since such occurrence the father has
exercised any control over plaintiff.

The father's refusal to acknowledge plaintiff's interest in
the estate, and therefore his refusal to account to plaintiff,
is not inconsistent with the theory that the conveyance was
consummated by duress, and the father's act of literally kick-
ing plaintiff out and cursing plaintiff for making the demand
are consistent with the claim of duress, and all such acts are
attributable to the father's desire to continue the exercise of
absolute control over the son in this respect and unjustly de-
prive the son of his share of said property.  Yet it must be
freely conceded that the incident related in plaintiff's testi-
mony as occurring in 1912, just about the date plaintiff de-
parted for California, brought to an end all vicious control
by the defendant  theretofore exercised over the son, and
thereafter left the son to act free of all restraint by his father.
Plaintiff is charged with full knowledge of all his rights, in-
cluding his right to set aside his deed because of the fraud
practiced by his father in compelling its execution and de-
livery.  Plaintiff's cause of action accrued at the time all
restraint over his voluntary will ceased, and left him free

to start the legal machinery of the courts in motion for the recovery of his estate.

The defendant has pleaded in bar of the action paragraph 711, C. C. A. 1913, to wit:

"There shall be commenced and prosecuted within three years after the cause of action shall have accrued and not afterward, all actions or suits . . . of the following description: . .

"3. Actions for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

Under the facts in this case, plaintiff was not free to discover "the facts constituting the fraud or mistake" until he was relieved from the oppression and duress of his father, about a year after making the deed. This action was commenced on the twenty-seventh day of March, 1916, by filing the original complaint. The exact date upon which plaintiff was "kicked out" of his father's house, as plaintiff expresses the incident terminating their relation, is not shown by the evidence. The nineteenth day of October, 1912, is fixed in plaintiff's evidence, at which time he was in the state of California, and he states that he had gone to California about six months prior to October 19, 1912. The bar of the statute began to run when plaintiff left his father's house and went to California, and was complete on the nineteenth day of October, 1915, beyond question. This action was not commenced until five months had expired after the bar of the statute had completely run. The defendant pleads gross laches, and, owing to the expiration of the period of limitation prescribed by the said statute as a bar, before the action was commenced under the most favorable circumstances to the plaintiff, such defense of laches should be and was allowed, thereby permitting the matters arising out of troubled family affairs to rest in peaceful slumber. Upon the whole case, giving to plaintiff's entire evidence the effect most favorable to plaintiff, the evidence is not sufficient to justify in law or equity a recovery by the plaintiff upon either theory advanced, or upon any theory deducible from the evidence and the pleadings.

The judgment is therefore affirmed.

FRANKLIN, C. J., and ROSS, J., concur.