[No. 22944. *En Banc.* October 22, 1931.]

RAMP BUILDINGS CORPORATION, *Respondent,* v. NORTH-WEST BUILDING COMPANY, *Appellant.*[1]

*Stratton & Kane,* for appellant.

*H. G. & Dix H. Rowland,* for respondent.

BEALS, J.—In its complaint, plaintiff alleged that, at all times mentioned therein, it held and controlled United States patents covering a system of staggered-

[1]Reported in 4 P. (2d) 507.

floor and ramp building construction, useful in garages; that, prior to May 12, 1926, defendant commenced the erection of a garage, consisting of several stories, in the city of Seattle, wherein it was proposed to install five motor ramps which came within the purview of plaintiff's patents; that, May 12, 1926, plaintiff and defendant entered into a license agreement whereby plaintiff authorized defendant to install its motor ramps in defendant's garage, for which license defendant agreed to pay plaintiff $3,465, or a greater sum in case the building should be enlarged; that defendant, May 17, 1926, paid the plaintiff, on account of the license agreement, the sum of $1,732.50; that defendant did enlarge its building, and that there became due the plaintiff from defendant, under the license agreement above referred to, the sum of $4,695, no portion of which had been paid, save the amount above mentioned; plaintiff praying for judgment for the balance which it claimed to be due.

Thereafter, defendant filed its answer and cross-complaint, and later, its answer and amended first affirmative defense and cross-complaint; it being with the latter pleading that we are concerned on this appeal. Defendant admitted the execution of the license agreement pleaded by plaintiff; that it constructed the garage mentioned by plaintiff, and that it paid to plaintiff the sum of $1,732.50; but denied the other material allegations of the complaint. By way of a cross-complaint, defendant alleged that, February 25, 1926, it leased two lots in the city of Seattle, and commenced thereon the construction of a garage; that the cost of the structure was to be upwards of $115,000, and that, in order to finance the same, defendant arranged to borrow from W. D. Comer & Co. the sum of $75,000, and secured payment of this sum by a mortgage on the leasehold and the building, the proceeds of the loan

to be advanced by the mortgagee from time to time to pay for material and labor as used; that, after the making of the loan, but before the payment of any considerable portion thereof, plaintiff notified defendant and also the mortgagee that it claimed that, in the erection of the garage, defendant was using a system of construction which was included within the patents owned by plaintiff, and plaintiff notified defendant that, unless defendant signed a contract similar to that referred to in plaintiff's complaint, plaintiff would cause the mortgagee to refuse to advance any further money, and thereby prevent the construction of the building; and

" . . . that pursuant to such notice and threats it (plaintiff) did, for the purposes aforesaid, and for the purpose of causing the defendant to lose the many thousands of dollars it had already put into the construction of said building, and also to said lease worth several thousands of dollars, induce and persuade the said W. D. Comer & Co., to refuse to advance and pay to the defendant the moneys required by its contract with defendant unless and until the defendant entered into said contract, Exhibit 'A' to the complaint herein; and the said plaintiff also notified the said defendant and the said mortgagee that it would not permit the use of said staggered floor building construction combined with ramps, and would enjoin the use thereof unless and until the said defendant entered into the contract, a copy of which is attached to plaintiff's complaint and marked Exhibit 'A.' "

Defendant further alleged that plaintiff also notified defendant's mortgagee of plaintiff's claims, and threatened the mortgagee with suits if it should pay any more money to defendant on account of the mortgage unless and until the mortgagee should see to it that plaintiff's claims were satisfied, and that, by reason of plaintiff's threats, inducements and intimidations, defendant's mortgagee refused to advance any

more money for the construction of the building unless and until defendant should accede to plaintiff's demands; that, by reason of defendant's inability to obtain money under the mortgage, construction work on the building was about to cease, and that defendant was without funds to construct the building, except as it should receive from the mortgagee the proceeds of the mortgage; that, because of the threats of plaintiff, defendant was faced with bankruptcy should it be unable to continue the construction of its building; and that, by reason of plaintiff's threats and compulsion exerted by plaintiff, defendant executed the contract set forth in plaintiff's complaint and made the payment to plaintiff hereinabove referred to.

Defendant further alleged that plaintiff's patents were, in fact, invalid, and were improvidently issued by the United States patent office. Defendant also denied that it had been or was in any wise infringing upon plaintiff's patents, and prayed for judgment against plaintiff for the amount of money which it had paid plaintiff under the license agreement.

By way of an affirmative defense, defendant alleged that plaintiff was engaged in carrying on business in the state of Washington, but that it had never complied with the laws of this state relating to the qualifications of foreign corporations, and that, therefore, plaintiff had no legal capacity to maintain this action.

Plaintiff demurred to defendant's cross-complaint as set forth in its answer, which demurrer was sustained; and, plaintiff having replied to defendant's affirmative defense denying that it was engaged in business in the state of Washington, the action proceeded to trial before the court, sitting without a jury. The court decided the action in plaintiff's favor and entered judgment against defendant for the balance due under the license agreement, the court finding that the build-

ing was not enlarged, and that defendant never owed plaintiff more than the sum specified in the license agreement. From the judgment against it for the balance of the license fee, together with interest, defendant appeals.

We are satisfied that the trial court did not err in making the finding of which appellant complains, to the effect

" . . . that at no time or times mentioned in the complaint was the plaintiff engaged in carrying on and doing business in the state of Washington."

A more serious question is presented by the order of the superior court (made by a department of the superior court other than that to which the case was assigned for trial), sustaining respondent's demurrer to the cross-complaint of appellant contained in its amended answer. This demurrer, of course, admitted the well-pleaded allegations contained in the cross-complaint, which are above summarized.

The modern doctrine of "business compulsion" differs somewhat from the well-recognized principle of duress. In our opinion, appellant's cross-complaint contains allegations which, under the cases of *Sunset Copper Co. v. Black,* 115 Wash. 132, 196 Pac. 640; *Duke v. Force,* 120 Wash. 599, 208 Pac. 67, 23 A. L. R. 1354; *Schafer v. Giese,* 135 Wash. 464, 238 Pac. 3; and *State v. Winthrop,* 148 Wash. 526, 269 Pac. 793, 59. A. L. R. 1265, render it good against a general demurrer.

Respondent argues that, because at the trial evidence was introduced by appellant showing that it had assigned its lease and sold the building, it is now estopped to question its liability to respondent upon the contract which is the subject matter of this action. Respondent may be correct in arguing that, if appellant has so disposed of the property, it cannot successfully resist this action, but appellant is entitled to have

this matter of alleged defense to its cross-complaint pleaded, and have the question presented to the trial court under issues properly framed. It may also be that appellant might be able to successfully defend against respondent's claim for the balance due on the contract, according to its terms, but would not have the right to recover judgment against respondent for the amount which it paid at the time of the signing of the contract. These and other questions may be presented upon a new trial of the action.

The judgment appealed from is reversed, with directions to the superior court to grant a new trial and overrule respondent's demurrer to appellant's cross-complaint.

TOLMAN, C. J., PARKER, MAIN, MITCHELL, HOLCOMB, HERMAN, and BEELER, JJ., concur.

MILLARD, J. (concurring)—I concur in the result. By the demurrer, the respondent admitted that it had threatened to interfere with the lawful business of the appellant unless the appellant agreed to an illegal exaction. That constituted duress, and I am of the opinion we should so hold, rather than designate the conduct as "business compulsion."