[No. 23102. *En Banc.* December 8, 1931.]

Otis B. Gardner, *Appellant,* v. Hattie A. Herbert et al., *Respondents.*[1]

*Wm. A. Johnson* and *Newton & Newton,* for appellants.

*Thos. A. Stiger,* for respondent.

Herman, J.—For more than fifteen years prior to 1928, plaintiff had been the husband of defendant

[1]Reported in 5 P. (2d) 782.

Hattie A. Herbert (who will be referred to herein as though she were the only defendant). In March of that year, defendant started a divorce suit against plaintiff, who had been partially paralyzed and incapacitated for work since about 1922. The day before the complaint in that action was served upon the plaintiff in this case, he executed to her a deed to a portion of their real estate. Plaintiff did not appear in that divorce action, and on April 17, 1928, defendant received an interlocutory order of divorce, by which she was awarded two houses and their lots, all the personal property of the parties, and the west three acres of the six acres in question here, with no other property whatsoever. The custody of the minor children, one a girl about eighteen, a child of defendant by another husband, and the other a boy about fourteen, was awarded to defendant, but the interlocutory order made no reference to their support.

Plaintiff claimed, shortly after the entry of the interlocutory order, that he and defendant had agreed that he would not appear in the divorce action, and that she might have all the real estate except the six-acre tract, which was to go to him. He consulted attorneys, who discussed his claim with Mr. Snyder, attorney of record for defendant when she was conducting her divorce case.

After negotiations between the attorneys, defendant and her attorney met with plaintiff's attorney, and defendant executed a deed conveying the property to plaintiff, who, accompanied by a relative, was in the building at the time the deed was executed, but was not in the office where the meeting took place. The deed was signed by defendant, and acknowledged before one of plaintiff's attorneys. An insurance policy was also delivered by defendant to plaintiff on the same day,

but it is not here involved. Shortly thereafter, plaintiff paid off a mortgage against the property. Several months after the execution and delivery of the deed, defendant obtained her final decree of divorce.

In the summer of 1929, a little more than a year after the delivery of the deed by defendant to plaintiff, it having come to plaintiff's attention that defendant, who had by that time remarried, was using the whole six acres and cutting timber thereon, demand was made upon her to vacate, and, upon her refusal, this suit was begun, August 9, 1929, to quiet title in plaintiff to the tract, and for damages for trespass thereon. Defendant denied signing a deed, and alleged that, if she did sign a deed, it was obtained by fraud and there was no consideration for it. She set up various counterclaims for money paid by her for support of the children and debts of the community. The trial court found that these claims by defendant would about balance the trespass demands, and no recovery was allowed either party thereon. The controversy before us is whether or not title should be quieted in the plaintiff. Judgment of the trial court was for defendant, and plaintiff has appealed.

There are two principal questions involved in this appeal: First, did respondent knowingly execute and deliver a valid deed transferring to appellant the property in question? Second, was the property such as respondent had the right to transfer?

In considering the first question, it is well to bear in mind that it is clearly established by the testimony of Clifford Newton, one of appellant's counsel, that the deed in question was executed by respondent and acknowledged before him after negotiations with G. L. Snyder, respondent's attorney, in the presence of that attorney. Mr. Snyder was not called as a witness by either party, and no reason is given why he was not

432

so called. It is a fair assumption that, if his testimony would have been favorable to the respondent, she would have called him. Respondent claims she did not know she signed a deed, but thought she was merely transferring an insurance policy. In view of Mr. Newton's testimony and the absence of any evidence from her counsel, who was present at the transaction, and taking into consideration all the other facts and circumstances of the case, we must find she knowingly signed the deed.

 It is contended that respondent signed under duress because the threat was made by appellant's counsel that, unless the deed was signed, "the matter would be presented to the court." In *Zent v. Lewis*, 90 Wash. 651, 156 Pac. 848, this court said:

" . . . it needs no argument to demonstrate that the threat to bring a civil suit to recover damages, as claimed, is not duress, since respondent and the Johnsons in good faith believed that there was in law a good cause of action for such claim."

The rule is also stated in 9 R. C. L. 722, as follows:

"It is the well established general rule that it is not duress to institute or threaten to institute civil suits, or take proceedings in court, or for any person to declare that he intends to use the courts wherein to insist upon what he believes to be his legal rights."

 It is also maintained that there was a want of consideration to respondent for signing the deed. This deed contained an allegation that it was executed for a valuable consideration. In 4 R. C. L. 500, the rule is announced:

"Want of consideration, in the absence of fraud, accident, or mistake, is not a ground for canceling a deed, especially where the instrument contains a recital that the conveyance is made for a valuable consideration, such recital being deemed to effect an estoppel as against the grantor."

We conclude, therefore, that the respondent did knowingly execute and deliver a valid deed transfering the property in question to appellant.

■ We will now discuss the question of whether the property was such as respondent had the right to transfer. In the second memorandum decision, the trial court said:

"With reference to the attempt on the part of the defendant in the divorce action to get a part of the property, I still think that, had the matter been presented to any court of equity, the deed in question would have been set aside and the property returned to the plaintiff for the use and benefit of the minor children. I have not taken occasion to investigate the law on this subject, nor have counsel presented any authority bearing on it, but it seems to me that, if the parties to an action can, immediately after a court has entered its decree providing for the support of the children out of the property of the litigants, nullify that decree by immediately going out and conveying it to one upon whom the duty to support the children does not rest, it is rather a farce for a court to deal with that subject."

The language of the interlocutory order is as follows:

"That she be decreed all the title and right in fee simple in the following real property [describing the two lots with houses] . . .

"That she be decreed the west three acres in the six acre tract [describing it]."

No provision can be found in the interlocutory order making the property subject to a charge to be used in supporting the children. The language of the interlocutory order was clear, plain and unambiguous. So far as the property rights of the parties were concerned, they were definitely settled by the interloctuory order, and it had the same force and effect with reference to them as would a final judgment.

Were the language of the interlocutory order uncertain, it might be possible to examine into the circumstances and determine what the trial court meant when the interlocutory order was entered, but here parol evidence is inadmissible to explain what was litigated in the divorce case, for the interlocutory order rendered therein is plain and unambiguous.

There was nothing according to the terms of the interlocutory order which could be held to impress upon the property in question a trust for the support of the children, or which could be construed as a restraint upon respondent's power to convey. We find, therefore, that respondent had the power to convey the property.

Some contention is made that appellant was guilty of laches. Respondent admits in her cross-complaint that in August, 1928, about three months after the deed was executed and delivered to him, she knew that appellant was claiming the whole six acres. Appellant was partially paralyzed. He paid off a mortgage on the property shortly after respondent deeded it to him. He brought this suit in August, 1929. Under these circumstances, it cannot be said that, because he permitted respondent to use the land for about fifteen months after he received the deed, he was guilty of such negligence as would bar his right to have title quieted in him.

The judgment is reversed and the case remanded, with directions to the trial court to enter a judgment quieting title in appellant to the land involved.

All concur.