[No. 26529. *En Banc.* August 30, 1937.]

THE STATE OF WASHINGTON, *on the Relation of William J. Ross et al., Respondents,* v. KING COUNTY *et al., Appellants.*[1]

[1]Reported in 71 P. (2d) 370.

*B. Gray Warner* and *Patrick M. Tammany,* for appellants.

*Colvin & Rhodes* and *Joseph B. Alexander,* for respondents.

STEINERT, C. J.—Two actions in mandamus, herein consolidated, were instituted by a number of employees of King county to compel the issuance of warrants for the unpaid portions of their salaries alleged by them to have been earned during a period of two successive years. Trial upon the merits before the court, sitting without a jury, resulted in findings and conclusions, based upon which judgments were entered conformable to the prayers of the petitions. The county has appealed.

During the years 1933 and 1934, respondents, thirty-five in number, were members of the staff of the county clerk of King county. All of the respondents had been duly appointed and were either qualified to act as deputy clerks or else were employed as clerical helpers. Most of the respondents had held their positions for many years previous; these will hereinafter be referred to as the majority respondents. The other respondents were appointed sometime in 1933; these will hereinafter be referred to as the minority respondents.

In October, 1932, the clerk's budget for 1933 was regularly approved and adopted by the county commissioners in accordance with the budget law, to which further reference will be made later herein. In the budget with reference to the clerk's office, the sum of $85,248 was appropriated for the year's payment of salaries and wages for forty-six designated positions, the amount for each being separately and specifically stated. The proportional amount for salaries and wages for the period between March 1 and December 31, 1933, was $71,040. Of this latter amount, the sum of $64,438.62 was currently paid to the employees, including respondents, then holding various positions with titles as designated in the budget.

In 1933, the clerk's budget for 1934 was similarly approved and adopted. Under the classification of "Salaries and Wages," the sum of $73,180 was appropriated for forty-two designated positions, the amount payable to each being likewise separately and specifically stated. Of this total amount, the sum of $60,861.30 was currently paid to the employees, including respondents, then holding various positions with titles as designated in the budget.

Prior to the adoption of the annual budgets, the county commissioners had instructed the various public officials, including the clerk, to reduce the amount of their respective budgets, but to avoid the cutting of wages, if possible. As finally adopted, the budgets designated the number of positions in the clerk's office and the amount of salary to which each was entitled. We emphasize the fact that, during all of this time, and for many years prior thereto, the respondents, with the exception of a very few, retained their designated positions in the office of the county clerk.

It appears that, in 1933, after the budget for that year had been adopted, the clerk employed twelve

extra, or additional, persons in his office. Similarly, in 1934, he employed seventeen extra persons. This was done, however, without the consent, and without any action on the part, of the county commissioners. The reason for employing these additional persons, it is asserted by all parties herein, was that the increase of work in the office necessitated it. For present purposes, we are concerned only with the fact that there was an increase in number of employees, and not with the reasons therefor.

Because of the limitations prescribed by the budget, the clerk, in order to maintain the extra help on the pay roll, adopted a plan for paying salaries and wages upon a basis which was at variance with the provisions of the budget law. Instead of seeking a revision of the salaries and wages of his employees, or securing an emergency appropriation for any excess, in the manner provided by law, the clerk, with the budget appropriation before him, arbitrarily allocated to each employee a purported budget position, and then, instead of paying the full monthly base pay for that position, paid a smaller monthly amount estimated on a number of days less than a full month. The employees, however, were required to work at their accustomed duties the full time, the days which were deducted being considered as contributed service.

All of the employees took the reduced amount of pay, but none of them agreed, orally or in writing, to accept it as in full payment. Some of them knew what the legal rate of pay, as established by the budget, was; others did not. Protests were made by some, but not by all. It was generally understood, however, that those who did not accept the reduced amount of pay would lose their positions. Protests, therefore, would have been of no avail, and consequently all of the employees retained their positions.

Warrants were issued upon the basis of the plan adopted by the clerk and were recognized and paid by the county auditor. The amounts thus paid to the extra help aggregated $6,485.30 in 1933 and $12,298 in 1934. In neither year, however, did the clerk exceed the total appropriation for salaries and wages as specified in the budget. In fact, there was a balance of $126.58 for that item left in 1933, and $19.20 in 1934. The net result, however, was that a substantial part of the amounts allocated by the budget for the payment of salaries for the positions held by the majority respondents was used to employ and pay extra help. In these actions, respondents, both majority and minority, seek to recover from the county the alleged deficiencies in their respective salaries.

At this point, it becomes necessary to examine the budget law and to consider its application to the facts herein presented. The budget law is contained in chapter 164, Laws of 1923, p. 523, as amended by chapter 143, Laws of 1925, Extraordinary Session, p. 391, and chapter 301, Laws of 1927, p. 736, Rem. Rev. Stat., §§ 3997-1 to 3997-10 [P. C. §§ 1652-1 to 1652-10], inclusive.

Section 1 of the act, Rem. Rev. Stat., § 3997-1, provides that each county official shall annually file with the county auditor detailed and itemized estimates of probable revenues from sources other than taxation and of all expenditures required by his office for the ensuing fiscal year.

Section 2 of the act, Rem. Rev. Stat., § 3997-2, requires the auditor to prepare a county budget which shall set forth the complete financial program of the county with reference to sources of revenue and expenditures. The expenditure section must set forth in comparative and tabular form the estimated expenditures for the ensuing fiscal year, the appropriations

for the current fiscal year, the actual expenditures for the first six months of the current fiscal year, and the actual expenditures for the last completed fiscal year. That section then continues:

"Such estimates, appropriations and expenditures shall be classified under the general classes of (1) salaries and wages (2) maintenance and operation (3) capital outlay (4) interest and debt redemption, and (5) expenditures proposed to be made from bond or warrant issues not yet authorized.

"Within the general class of 'salaries and wages' each salary shall be set forth separately together with the title or position of the recipient. . . ."

The clerk's budget conformed to the provisions of this section, both as to general classification and as to specific designation of positions and salaries thereof.

In §§ 3 and 4, Rem. Rev. Stat., §§ 3997-3 and 3997-4, provisions are made for hearings on the preliminary budget, fixing and determining each item of the budget, adoption of the budget as finally determined, and fixing the amount of the necessary levies. These provisions were likewise fully met.

Section 5 of the act, Rem. Rev. Stat., § 3997-5, is the important section in our present consideration. So far as pertinent here, it provides as follows:

"The estimates of expenditures *itemized and classified* as required in section 3997-2 hereof and as finally fixed and adopted in detail by said board of county commissioners *shall constitute the appropriations* for the county for the ensuing fiscal year; and the county commissioners and every other county official shall be limited in the making of expenditures and/or the incurring of liabilities *to the amount of such detailed appropriation items or classes* respectively; provided, that upon a *resolution* formally adopted by the county commissioners at a regular or special meeting and entered upon the minutes, transfers or revisions *within the general class of 'salaries and wages'* . . . may be made; . . .

"Expenditures made, liabilities incurred or warrants issued in excess of any of the detailed budget appropriations or as revised by transfer as herein provided shall not be a liability of the county but the official making or incurring such expenditure or issuing such warrant shall be liable therefor personally and upon his official bond." (Italics ours.)

Section 6 of the act, Rem. Rev. Stat., § 3997-6, refers to public emergencies and outlines the procedure for taking care of them. An expenditure of money not provided for in the budget may be made only after the county commissioners, by unanimous vote, have adopted a resolution stating the facts constituting the emergency and the estimated amount of money required to meet it, and after publication of notice and hearing thereon. In case of extreme emergency, caused by fire, flood, explosion, storm, earthquake, epidemic, riot or insurrection, or to meet mandatory expenditures required by law, a resolution, duly adopted by unanimous vote of the county commissioners, is sufficient without further notice or hearing.

Analyzing the provisions of the budget law, as above set forth, and in so far as it applies to the present situation, we note the following: (a) The clerk must submit an itemized statement of all expenditures required by his office for the ensuing year; (b) such estimate must be so classified as to show, in one class, the amount of salaries and wages of his office; (c) within this class, each salary must be set forth separately, together with the title or position of the recipient; (d) the estimate of expenditures so itemized and classified, when finally adopted, shall constitute the appropriation for the ensuing fiscal year; (e) the clerk is limited, in making expenditures or incurring liabilities, to the amount of such detailed appropriation items or classes, respectively; (f) only upon resolution formally adopted by the county commissioners may trans-

fers or revisions within the general class of salaries and wages be made; and (g) expenditures *in excess* of the detailed budget appropriation or as revised by transfer shall not be a liability of the county, but only that of the clerk, both personally and upon his official bond.

It has already been shown that the clerk, in this instance, submitted his estimates of expenditures for 1933 and 1934, setting forth the exact amount, in detail, required for salaries and wages for the respective positions in his office, and that the estimates were formally approved, thus constituting the appropriations for the respective years. It has also been shown, and emphasized, that the respondents, with a few exceptions, were the duly appointed, qualified and acting deputies or employees in the county clerk's office at and prior to the time of the adoption of the budgets for 1933 and 1934 and were continuously employed in their respective positions.

By the mandate of the statute, the clerk was limited, in his expenditures, to the respective amounts of such detailed appropriation items or classes. In other words, he could not make expenditures, or *incur liabilities*, except for the items or classes specified, and to the extent of the amounts therein specifically designated.

It is conceded in this case that no resolution was ever passed by the commissioners permitting any transfer or revision within the general class of salaries and wages. It is also conceded that no emergency was ever declared, by resolution or otherwise, and that no permission was ever given by the commissioners for the employment of additional help.

Within these provisions and limitations, and up to this point of precept and prohibition of the budget law, the rights of those respondents who had

been appointed to their respective positions prior to 1933 and who were thereupon and thereafter retained seem quite clear. They were the duly appointed, qualified and acting deputies or else the hired employees in the clerk's office. Their positions had been specifically designated in the budget and were continuous. Their salaries had been definitely fixed. They legally held the positions for which the appropriations were made, and, so long as they retained their positions and performed their work, they were entitled to the salaries provided therefor. They were never discharged, nor did they ever resign. No question is raised as to their services or as to the amounts earned. The liability of the county as to them became fixed and binding unless it is obviated by some definite, mandatory provision of the budget law.

The appellant points to and relies upon that provision in § 5 of the budget law, Rem. Rev. Stat., § 3997-5, which requires that expenditures made, or liabilities incurred, in excess of any of the detailed budget appropriations or as revised by transfer, shall not be a liability of the county, but only that of the official making or incurring such expenditure. The contention is that, since the clerk has exceeded his authority in the matter of employing additional help and has applied a part of the funds appropriated for regular salaries to the payment of salaries for extra help, any excess amount now necessary for the payment of the balances owing the respondents is not a liability of the county, but that respondents must look solely to the clerk personally or to his official bond.

We think that the appellant has placed the wrong interpretation upon the statute. In so far as the majority respondents are concerned, they are not seeking to recover anything "in excess" of the detailed budget appropriation covering their salaries. On the contrary,

they are seeking to recover only that which was provided in the budget for their salaries as established therein. They ask for nothing more, and insist that they should not be compelled to take anything less. If they receive the amounts owing them, they will have been paid exactly what the law provided that they should receive.

The "excess," if any, beyond the budget appropriation will come about wholly from employing and paying additional help for whom no provision had been asked or made. That is the excess liability, if any, for which the county should not, under the statute, be held. The liability for the salaries earned by the majority respondents, however, remains constant. It is true that a part of the funds have been used toward the compensation of additional help, but that was wholly unauthorized and, so far as such respondents were concerned, did not relieve the county of its liability to them.

In *Rudnick v. Pierce County*, 185 Wash. 289, 54 P. (2d) 409, the county commissioners had previously adopted a resolution fixing a wage scale to apply to certain county employees engaged in road and bridge work. Although the resolution remained in full force and effect during the time in which the services were performed, the employees were nevertheless paid at lower rates than were called for by the schedule. In an action brought by the employees against the county to recover the difference between the amounts received by them and the amounts which they would have received had they been paid according to the schedule, it was held that they were entitled to receive the wages fixed by the resolution which had been adopted by the board of county commissioners, and hence were entitled to recover the difference between

the sums paid them and the amounts which they should have received.

The case at bar is even stronger than the *Rudnick* case. Some of the majority respondents were deputy county clerks, coming within the class of public officers, and any waiver of salary by them or agreement to accept less than that fixed by law would be against public policy and void. *State ex rel. Knez v. Seattle,* 176 Wash. 283, 28 P. (2d) 1020, 33 P. (2d) 905. All of the majority respondents, including even those who were merely hired as office help, were engaged in the performance of those duties which are required by law to be performed by the clerk. The majority respondents were upon an equal footing, at least, with the employees in the *Rudnick* case.

The salary or wage provided by law, or fixed in the manner provided by law, can not be waived. If it can not be waived, it can not be withheld.

Appellant cites and relies upon *State ex rel. Heffernan v. Hoquiam,* 186 Wash. 50, 56 P. (2d) 1012. In that case the city council had by proper action reduced the pay attached to a particular position, as it had the right to do. In the case before us, the salaries and wages of the majority respondents were never reduced in the manner provided by law, but remained fixed and constant, according to the respective budgets, throughout the entire period of their service.

The *Heffernan* case does, however, state one principle of law which, by its application, compels a distinction between those respondents who were regular employees in the clerk's office both before and during 1933 and 1934 and those who were employed during the latter two years only. The distinguishing principle is that one claiming the salary of a municipal office or employment must point to a provision of the law which, with certainty and beyond doubt, au-

thorizes it. Those of the respondents who were in the county employ prior to the adoption of the 1933 budget and who thereafter continued in such employment, were regular employees, for whom it must be said that the budget made provision. Those who came in afterwards, even though they were employed in similar work, must be classed as extra help, for whom the budget made no provision. Hence, the former can point to a provision of the law which certainly and beyond doubt authorized their salaries; the latter can not. Our conclusion is that the majority respondents, as above defined, are entitled to the writ of mandamus to compel the issuance of the warrants, but that the minority respondents are not entitled to the relief sought.

The consolidated causes will be remanded to the superior court with instruction to modify the judgments in accordance with the views herein expressed. Neither party will recover costs upon the appeal.

MILLARD, MAIN, HOLCOMB, and ROBINSON, JJ., concur.

GERAGHTY, J. (dissenting)—This case is not within the principle announced in *State ex rel. Knez v. Seattle*, 176 Wash. 283, 28 P. (2d) 1020, 33 P. (2d) 905. In that case, as in others of like import passed upon by this court, the number of officers and employees and their salaries had been definitely fixed by ordinance and the officers suing for full pay were within the number authorized. Here, several deputies in excess of those authorized were employed. The respondents cannot be considered as having a right superior to the other employees in the clerk's office. None of them had any vested tenure or claim to priority in employment.

The majority opinion refers to the employees in the clerk's office as "regular" and "extra." There is no

such distinction either in fact or in law. Employees were all equally regular or otherwise. They had no fixed tenure, but were dependent on the will of the county clerk. As a matter of fact, as shown by the testimony, they were not designated either as regular or extra on the payrolls. The process is explained by Mr. Smith, chief deputy auditor, testifying as to how the accounts were kept in the auditor's office. Asked by the court how he determined some positions were extra:

"THE WITNESS: We determined it by checking these different positions off against the budgets, just the way the payrolls were set up. The budgets called for a certain number of Court Clerks, a certain number of this, and a certain number of that positions. THE COURT: Do the original County Clerk's payrolls carry the term 'extra,' or 'extras'? THE WITNESS: No; they do not carry the term 'extras.' We line up the payroll with the budget, as the positions appear in the budget book, and then if . . . there are any extras in there they probably raised the question and satisfied themselves that they were within their rights in drawing warrants to pay the individuals. . . . MR. TAMMANY: . . . As I understand Mr. Smith, and he will correct me when I make this statement, these extras have no reference whatsoever to any named individuals in the office? THE WITNESS: None at all. Q. (By Mr. Tammany) That simply means that during 1934 there were employed, in addition to the number of classified court clerks shown in the budget, 9 court clerks? A. Correct. Q. And in addition to the number of recorders provided for in the budget there were 8 additional recorders? A. Yes. . . . Q. And that is with reference to positions, and not with reference to names? .A. Correct. . . . Q. And nowhere in the budget, or nowhere in the budget records does there appear any name for a certain position, in the establishment of the budget? A. None at all."

It may be said in passing that neither the county clerk nor his chief deputy was present in court to ex-

plain the transaction. The fact was that the board of county commissioners, in preparing the budget for the years involved, gave the county clerk's office a lump sum, with direction to the clerk that he cut his cloth accordingly.

To believe that this fact was not known to the respondents, would be running contrary to all experience. No group of men is better informed as to the budget process and the sums there made available for the various offices than the employees themselves, who are immediately concerned. As several of the respondents testified, they were given to understand that they would have to take less or give up their places. They preferred to accept the situation and hold their positions. Their claim to increased back pay is manifestly an afterthought.

It seems to me the opinion condones a practice that is the negation of all orderly government and, to a large extent, nullifies the wholesome restraints of the budget law. Indeed, it is hard to see how, if the rule announced in the opinion is to stand, any budget law can be drawn that will effectively safeguard the public treasury.

Holding these views, I am constrained to dissent from the majority opinion.

BLAKE and TOLMAN, JJ., concur with GERAGHTY, J.

BEALS, J. (dissenting)—I concur in the views expressed by Judge Geraghty, but wish to add the following to what he has written:

Conceding that certain of the "majority respondents" were deputy county clerks, and for this reason properly classified as public officers, in my opinion the record does not support any attempt to draw a distinction between persons holding that classification. The mere fact that some of these persons were old em-

ployees and some new is, in my view, immaterial. They were all deputy county clerks, and the budget made no provision for them by name or by numerical or other designation of a particular office or position. There is, then, no legal method by which the sheep can be separated from the goats, and in my opinion it cannot be held that any are entitled to prevail in this action.

The case of *Rudnick v. Pierce County*, 185 Wash. 289, 54 P. (2d) 409, cited by the majority, has no bearing upon the question here to be determined. In that case, it appeared that the county commissioners by resolution fixed a wage scale to apply to certain designated classes of labor. The plaintiffs were employed by Pierce county, and admittedly came within the classifications referred to in the resolution. They were paid less than the prescribed rates, and sued for the difference. No question concerning any budget law was presented. Neither did it appear that any law or resolution of the county commissioners had been violated in employing the number of men whose wages were in question. The county had fixed the wages to be paid to the workmen, the work had been performed, but the men had been paid less than the wages fixed by the county commissioners. The county, on appeal to this court, simply contended that the workmen should have presented claims for damages under Rem. Rev. Stat., § 4077 [P. C. § 1664a], and that, not having done so within the time limited by the section, they could not recover. Appellant also argued that the resolution fixing the wage scale established merely a maximum, and that lower wages could be paid.

In my opinion, the *Rudnick* case bears no relation whatever to the facts in the case at bar, and does not support the conclusion reached by the majority. I accordingly dissent.