[No. 27179. *En Banc.* December 23, 1938.]

THE STATE OF WASHINGTON, *on the Relation of Charles Bradford, Respondent,* v. KING COUNTY *et al., Appellants.*[1]

[1]Reported in 85 P. (2d) 670.

B. *Gray Warner, Edwin C. Ewing,* and *Lloyd W. Shorett,* for appellants.

*Ernest R. Cluck* and *Houghton, Cluck & Coughlin,* for respondent.

SIMPSON, J.—This proceeding involves an application for a writ of mandate by respondent, on behalf of himself and his assignors, to compel the issuance of warrants for the unpaid portions of the salaries and wages allocated to the positions filled by them in the King county budget adopted by the board of county commissioners for the year 1934.

In his petition and affidavit for a writ of mandate, respondent alleged that, during the year 1934, he and his assignors were deputy assessors of King county, Washington; and that the appellants failed to pay respondent or his assignors the total amount of the legal salaries for their various positions as duly and legally fixed by the board of county commissioners for that year, but did at various times subtract certain sums from the amounts payable monthly as salaries. Then followed allegations to the effect that the deputy assessors had assigned their claims to respondent, and that he had filed a verified claim therefor with the board

of county commissioners September 13, 1937, which had been rejected. Another allegation was to the effect that respondent was entitled to a writ of mandate compelling the proper county officials to issue a warrant in payment of the sums due respondent and his assignors.

The appellants demurred to the petition and affidavit for a writ of mandate and filed an answer thereto. The answer denied respondent or his assignors were entitled to any specific designated budget positions or any designated budget salaries; declared respondent and his assignors had been fully paid and compensated, and a requirement of further compensation would be an illegal disbursement of public funds; asserted that, during the year 1934, the county assessor proceeded in violation of the restrictions of the budget of his office to employ, without authority or approval of the board of county commissioners, employees in excess of the number designated in the budget of his office and proceeded to compensate them in violation of the express terms of his budget; and alleged if there is any liability to be imposed upon appellants in this action, the liability must be limited to the amount reverting to the general fund at the end of the fiscal year 1934, to-wit: $312.66; and that, if any other sum should be found to be due, such an item would constitute an obligation of the county assessor for the year 1934 and of his official bond. Finally, it was alleged that, by reason of the running of the statute of limitations, any recovery of respondent or his assignors must be restricted to that portion of the year 1934 subsequent to September 28, 1934.

Respondent replied and alleged that he and his assignors were advised that those who would not accept the reduced amounts would be discharged from their positions, and that neither he nor his assignors

freely and voluntarily consented to the salary reductions, but submitted thereto by reason of duress; that the statute of limitations did not start against them until after the month of February, 1935, when the duress ceased; and that the claim of respondent and his assignors for the portion of their salaries which had been withheld from them was not presented to, nor disallowed by, the commissioners of King county until September, 1937; and that the statute of limitations did not begin to run until after that date.

The trial court entered findings of fact, stating that, the county assessor having announced that the acceptance of the reduced compensation was mandatory and unavoidable, it was well known to all of the deputies and employees of his office that, if they did not submit to such reductions, they would be discharged from their positions with King county. Hence, they did not freely and voluntarily consent to the salary reductions, but submitted thereto because of the duress which continued throughout the year 1934, and until the assessor retired from office.

The court entered conclusions of law to the effect that, by reason of the duress exercised, the respondent and his assignors were not free to sue for the amounts withheld from them, and the statute of limitations did not begin to run against them until after the month of February, 1935, when the duress ceased; and that this action was timely commenced. Judgment was then entered directing the payment to respondent of the sum of $12,094.27 plus interest at six per cent from December 31, 1934, until the warrant therefor was issued. From that judgment, this appeal is taken.

The pertinent facts which are necessary to note are these: Respondent and his assignors, with the exception of Rose Parish, were, during the year 1934 and many years prior thereto, deputy assessors and

office employees in the office of the county assessor of King county. Miss Parish was appointed to her position during the month of January, 1934, and served during the balance of the year.

The county assessor, Mr. Melvin S. Wooster, submitted a temporary budget to the board of county commissioners in the sum of $117,000. Thereafter, one of the commissioners called upon Mr. Wooster and advised him of the sum which would be allocated to his office, and requested that a budget be submitted to meet those figures. In accordance with these directions, the assessor submitted a new budget in the sum of $104,372.

Thereafter, in October, 1933, the budget for the assessor for the year 1934 was regularly approved and adopted by the board of county commissioners of King county pursuant to the state budget law. In that budget, salaries and wages for the personnel of the assessor's office were established; the positions in that office were specified and classified; and the salaries for the different positions were provided for in the budget. The salaries of the regular employees were left at the amount at which they had been previously fixed because the county commissioners urged the assessor to hold salaries as high as he could. The board never passed any resolution changing the scale fixed in the regular budget.

The completion of the assessment roll during the year 1934 necessitated engaging additional field deputies. In order to pay the additional employees under the above mentioned 1934 budget, the assessor paid the regular deputies and employees on his staff a smaller amount per month than they were allowed in the budget even though they continued to perform the same duties at full time in which they had been engaged prior to the reduction in salary. Included in

the total appropriation was an appropriation for salaries and wages of field deputies of $7,465, and the wages deducted from regular employees amounted to something in excess of $12,000. The money thus obtained was used for the field work.

In August, 1937, the employees whose salaries were thus affected, executed assignments of their claims to the respondent, and he, in turn, filed a claim therefor September 13, 1937, with the board of county commissioners, and the same was rejected. At the close of the fiscal year, all unexpended moneys in the salaries and wages fund for the King county assessor for the year 1934 reverted to the general fund of the county.

As we view it, this appeal presents three questions for consideration, viz: (1) Are the deputies and employees of the county assessor's office entitled to the full amount of the wages and salaries specified in the budget approved by the board of county commissioners for the respective positions in that office? (2) Did the county assessor exercise duress over his deputies and employees during the year 1934? (3) To what extent does the statute of limitations apply to the instant situation?

The budget law appears in Rem. Rev. Stat., §§ 3997-1 to 3997-10 [P. C. §§ 1652-1 to 1652-10], inclusive. The pertinent provisions thereof are as follows:

Rem. Rev. Stat., § 3997-1 [P. C. § 1652-1], provides that each county official shall file with the county auditor a detailed and itemized estimate of all expenditures required by such office for the ensuing year.

Rem. Rev. Stat., § 3997-2 [P. C. § 1652-2], provides, *inter alia:*

"Within the general class of 'salaries and wages' each salary shall be set forth separately together with the title or position of the recipient. . . ."

Rem. Rev. Stat., § 3997-5 [P. C. § 1652-5], provides:

"The estimates of expenditures itemized and classified as required in section 3997-2 hereof and as finally fixed and adopted in detail by said board of county commissioners shall constitute the appropriations for the county for the ensuing fiscal year; and the county commissioners and every other county official shall be limited in the making of expenditures and/or the incurring of liabilities to the amount of such detailed appropriation items or classes respectively; *provided, that upon a resolution formally adopted by the county commissioners at a regular or special meeting and entered upon the minutes, transfers or revisions within the general class of 'salaries and wages' and of 'maintenance and operation' may be made;* . . .

"Expenditures made, liabilities incurred or warrants issued in excess of any of the detailed budget appropriations or as revised by transfer as herein provided shall not be a liability of the county but the official making or incurring such expenditure or issuing such warrant shall be liable therefor personally and upon his official bond. . . ." (Italics ours.)

■ It is no longer open to question in this jurisdiction that, where salaries are fixed by the budget of the legislative or governing body of a city or county, a regular employee can look to that salary as fixed in the budget and recover for any reduction not authorized or approved by the appropriate legislative body of the political subdivision in question. *Rhodes v. Tacoma,* 97 Wash. 341, 166 Pac. 647; *State ex rel. Knez v. Seattle,* 176 Wash. 283, 28 P. (2d) 1020, 33 P. (2d) 905; *Rudnick v. Pierce County,* 185 Wash. 289, 54 P. (2d) 409; *State ex rel. Ross v. King County,* 191 Wash. 340, 71 P. (2d) 370.

Conceding that respondent and his assignors fall within the scope of this rule, it is necessary to ascertain to what recovery they are entitled in view of the alleged duress and the running of the statute of limitations.

True, the salary reductions did generate a spirit of dissatisfaction among the personnel of the assessor's office, and many of the employees protested the reduction, but accepted it. It is urged that many of the employees so affected were married and had families, and by reason of the uncertainty of obtaining other employment, coupled with the fear of being discharged in the event the salaries were complained of, the making of the reductions constituted duress. Mr. Wooster testified that he told his employees that he had done the best he could do for them with the funds at his disposal, and he left each of them to work out their own solutions under the reduced salary scale. Mr. Wooster testified, in substance, that, if some of his employees would not continue to work under the reduced salary scale, he would have no alternative but to discharge such employees and engage other persons.

The question of whether or not there is duress is a question of fact to be determined from all of the surrounding circumstances and personal characteristics of the parties involved in each particular case. *Cornwall v. Anderson,* 85 Wash. 369, 148 Pac. 1; 9 R. C. L. 711, § 2.

In *Whitman Realty & Inv. Co. v. Day,* 161 Wash. 72, 296 Pac. 171, the court stated:

"Generally speaking, duress does not exist unless one, by the unlawful act of another, is induced to make a contract under circumstances which deprive him of the exercise of his free will. The rule is well stated in 2 Greenleaf, Evidence, § 301:

" 'Duress is that degree of severity, either threatened and impending, or actually inflicted, which is sufficient to overcome the mind and will of a person of ordinary firmness.' "

See, also, *Gardner v. Herbert,* 165 Wash. 429, 5 P. (2d) 782; *Bair v. Spokane Sav. Bank,* 186 Wash. 472,

58 P. (2d) 819; *Investment & Securities Co. v. Adams*, 192 Wash. 41, 72 P. (2d) 288.

The record does not disclose that Mr. Wooster threatened to discharge employees who might bring suit for the amount withheld from their regular salary as fixed in the budget. On the contrary, it appears that he presented to his employees in a dignified, courteous, and discreet manner the fact that the salary reductions were rendered necessary to insure the timely and appropriate discharge of the duties incident to his office, and his sole concern was that his employees continue to perform the same services under the reduced salary scale which they had theretofore rendered.

Under the record as made, we are compelled to hold that respondent and his assignors were not subjected to duress, but merely anticipated the same, and hence the trial court erred in concluding that the county assessor exercised duress over the respondent and his assignors.

Finally, it is necessary to ascertain what recovery respondent and his assignors may effect by reason of the running of the statute of limitations. In view of the fact that no duress has been established, it cannot be said that the statute of limitations has been tolled by virtue of duress.

Rem. Rev. Stat., § 155 [P. C. § 8160], provides:

"Actions can only be commenced within the periods herein prescribed after the cause of action shall have accrued, . . ."

Rem. Rev. Stat., § 157 [P. C. § 8162], states:

"Within six years: . . .

"2. An action upon a contract in writing, or liability express or implied arising out of a written agreement. . . ."

Rem. Rev. Stat., § 159 [P. C. § 8166], reads:

"Within three years: . . .

"3. An action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument; . . ."

The appellants contend Rem. Rev. Stat., § 159, is applicable here, whereas the respondent contends that Rem. Rev. Stat., § 157, should be applied to the claims in controversy.

The case of *State ex rel. McMillan v. Miller,* 108 Wash. 390, 184 Pac. 352, is decisive of the correctness of appellant's contention. That case involved a mandamus action instituted in the superior court of Whatcom county to compel the auditor of that county to issue a warrant to him for services rendered by him as county commissioner. This court held that the obligation was essentially contractual in nature, and observed:

"We now feel constrained to hold, in the light of the decision of the supreme court of the United States above quoted from, notwithstanding expressions in the authorities and even in our own decisions seemingly somewhat out of harmony therewith, that the obligation on the part of Whatcom county to pay McMillan for services rendered by him as county commissioner became contractual in its nature upon the rendition of such services, and that therefore *the three-year statute governs* as to the time within which he was required to seek recovery in the superior court upon his cause or causes of action for compensation for his services." (Italics ours.)

See, also, *Fisk v. Jefferson Police Jury,* 116 U. S. 131, 29 L. Ed. 587, 6 S. Ct. 329.

Relator's right of action accrued upon the first of each month, and he was entitled to seek relief at that time in the courts to recover unpaid salary earned during the previous month. *State ex rel. McMillan v. Miller, supra.*

This action having been instituted on September 28, 1937, respondent and his assignors are entitled to judgment for the amount of their salaries withheld from September 28, 1934, until December 31, 1934.

The judgment is reversed, and remanded with instructions to proceed in accordance with this opinion.

HOLCOMB and ROBINSON, JJ., concur.

MILLARD, J. (dissenting in part)—The judgment should be affirmed. No part of the claim of respondent was barred by the statute of limitations, inasmuch as the respondent and his assignors labored under the fear, which was well founded, that, if they sued on the first of any month they were unpaid, they would be discharged. Duress or undue influence, such as that which obtained in the case at bar, tolls the statute of limitations until cessation of the duress or undue influence.

"In suits for relief on the ground of duress or undue influence, such as to set aside deeds, etc., the statute does not begin to run until the duress or undue influence ceases, notwithstanding it does not cease until the death of the party on whom it has been practiced, although it will run from that time." 37 C. J. 949.

See, also, *Eureka Bank v. Bay,* 90 Kan. 506, 135 Pac. 584; *Allen v. Leflore County,* 78 Miss. 671, 29 So. 161; *Aldrich v. Steen,* 71 Neb. 33, 98 N. W. 445, 100 N. W. 311; *Bither v. Packard,* 115 Me. 306, 98 Atl. 929; *Durazo v. Durazo,* 19 Ariz. 571, 173 Pac. 350.

It is a general rule that, in the case of fraud, the party defrauded must act with promptness on the discovery of the fraud; however, in that species of fraud involving undue influence or pressure, the courts uniformly hold that time does not run against the injured party until he is emancipated from the dominion under which he stood at the date of the transaction.

We held in *Ramp Buildings Corp. v. Northwest Building Co.*, 164 Wash. 603, 4 P. (2d) 507, 79 A. L. R. 651, that one who, in consequence of threats of suit for alleged violation of a patent by the building he was constructing, could not get advances on a building loan until he had obtained a license from the owner of the patent, which he accordingly obtained in order to avoid bankruptcy, may, if the patent is invalid or was not being infringed by him, recover the amount paid for the license as having been obtained by business compulsion.

In other words, we held that the threat to interfere with the lawful business of the appellant in the case unless the appellant agreed to illegal exaction constituted "business compulsion," and that the one so victimized could recover, from the one who intimidated him, the amount thus obtained; that is, when the threat or intimidation puts a business man in such fear of losing his business that he submits to an illegal exaction, the business man is a victim of business compulsion, which is nothing more than a species of duress. It differs not in principle from the case at bar, where, on the same economic ground, the respondent submitted to an illegal exaction. He was compelled to submit to a salary reduction not authorized or approved by the appropriate legislative body of the county. The business man would lose his business— his living—if he did not accede to an illegal demand. The wage earner or salaried employee, if he did not submit to the illegal reduction of pay, would lose his job or position—lose his living.

As observed by the editor in the annotation on the subject of "Business Compulsion," 79 A. L. R. 655,

"The doctrine of 'business compulsion' has been sometimes regarded as something different from duress. In the sense that it is a relaxation of the early common-law rules, this is true. Yet, broadly speak-

ing, 'business compulsion' is a species of duress—not the common-law duress to be sure, but duress clothed in modern dress."

We are in accord with the rule that money voluntarily paid under a claim of right to the payment, with knowledge of the facts by the person making the payment, can not be requested back on the ground that the claim was illegal. However, as we held in *Ramp Buildings Corp. v. Northwest Building Co.*, 164 Wash. 603, 4 P. (2d) 507, 79 A. L. R. 651, where the party submits to an illegal exaction because of some necessity which amounts to compulsion, the victim may recover the amount paid as having been obtained by business compulsion. Where one, to prevent injury to his person, business, or property, is compelled to make payment of money which the party demanding has no right to receive, and no adequate opportunity is afforded the payer effectively to resist such payment, it is made under duress or business compulsion and can be recovered. So, too, where one, to prevent loss of his job or position, is compelled to submit to the withholding of a portion of his wages or salary which the party (either in person or by agent) demanding has no right to withhold and the employee is not afforded an adequate opportunity effectively to resist such withholding or reduction of his pay, that withholding or reduction is made under duress. There is no magic in a name.

At the common law, duress meant duress only of person; and nothing short of a reasonable apprehension of imminent danger to life, limb, or liberty sufficed as a basis for an action to recover money paid. *Illinois Merchants Trust Co. v. Harvey,* 335 Ill. 284, 167 N. E. 69.

The doctrine has been gradually extended, so that the payment of money or the making of a contract

under the circumstances of business necessity which obtained in *Ramp Buildings Corp. v. Northwest Building Co., supra,* rendered the payment involuntary and entitled the party so coerced to recover the money paid. That doctrine is supported by many decisions. See 79 A. L. R. 657, 658. The same rule is applicable to the facts in the case at bar.

STEINERT, C. J., and MAIN, J., concur with MILLARD, J.

BEALS, J. (dissenting)—For the reasons stated by Judge Geraghty in his dissent in the case of *State ex rel. Ross v. King County,* 191 Wash. 340, 71 P. (2d) 370, the case of *State ex rel. Knez v. Seattle,* 176 Wash. 283, 28 P. (2d) 1020, 33 P. (2d) 905, is not authority for the conclusion reached by the majority in the case at bar. In my opinion, the case of *Rudnick v. Pierce County,* 185 Wash. 289, 54 P. (2d) 409, is not in point, for the reasons stated in the dissent which was written by the undersigned in the case of *State ex rel. Ross v. King County, supra.* In the case at bar, the opinion of the majority is supported only by the opinion of this court in the case of *State ex rel. Ross v. King County, supra,* and as, for the reasons stated in the two dissents above referred to, I am of the opinion that that case was wrongly decided and should not be followed, and as the case still stands alone, I dissent from the conclusion reached by the majority to the effect that the respondent herein is entitled to recover judgment against King county in any sum whatsoever.

I agree with the majority in holding that the record fails to show that any duress was exercised by the former county assessor over respondent or any of his assignors. No liability against a county can be created in any such manner as that relied upon by respondent as constituting duress. I also agree with the majority in its application of the statute of limitations to por-

tions of respondent's claim and the claims of his assignors.

In my opinion, however, the judgment appealed from should be reversed, with instructions to dismiss the action, and I accordingly dissent from the conclusion reached by the majority.

GERAGHTY and BLAKE, JJ., concur with BEALS, J.

