[No. 30585.   Department One.   April 7, 1949.]

FRIEDA ERCKENBRACK, *Respondent,* v. AUDREY JENKINS, *Appellant.*[1]

[1]Reported in 204 P. (2d) 831.

*Harry Ellsworth Foster* and *Ronald W. Sholund,* for appellant.

*William Lee. Parr* and *Will M. Derig,* for respondent.

JEFFERS, C. J.—On or about September 2, 1947, Frieda Erckenbrack instituted an action against Audrey Jenkins, a spinster, also known as Frances Audrey Jenkins, in the superior court for Thurston county, to recover the sum of $2,049.09, representing the down payment on the purchase price of a certain piece of real estate in Thurston county. The complaint in substance alleged that on or about June 13, 1946, defendant entered into a written contract with E. W. Hutson and Mary Hutson, his wife, to purchase lot 3, block 3, Pattison's Home Addition to Olympia, Thurston county, Washington, for the sum of $10,400, of which pur-

chase price the sum of $2,900 was paid as a down payment, the balance to be paid at the rate of $82 per month. A copy of the contract was attached to the complaint, marked exhibit A, and by reference made a part thereof. The particular provision of the Hutson contract which is involved here is as follows:

"No assignment of this contract or the subject matter hereof or contract to assign or convey the subject matter hereof shall be valid, unless the same be in writing attached hereto and approved by the seller, and any such assignment shall render this contract voidable at the option of the seller."

It was further alleged in the complaint that in accordance with the terms of the Hutson contract, the purchaser, Audrey Jenkins, defendant herein, could not assign the contract or the subject matter, or contract to assign or convey the subject matter, unless the same was in writing attached to the contract and approved by the seller, and that any assignment without the consent of the seller would render the contract voidable.

It was further alleged that on or about July 1, 1947, defendant employed one Dale Brady to sell her equity or interest in the Hutson contract; that the property was advertised for sale by Brady, and plaintiff inquired at Brady's office concerning the sale and was informed that the purchase price of the property was eleven thousand dollars, to be paid as follows: two thousand dollars cash, the balance of nine thousand dollars payable at the rate of one hundred dollars per month; that on July 9th plaintiff paid to the real-estate broker one hundred dollars, and on July 10th paid the same broker the sum of $1,949.09, which represented the balance of the down payment with the taxes and the insurance premium prorated; "that plaintiff made said payments with the understanding that defendant would and could enter into a contract whereby upon completion of payments title would forthwith be given to her"; that plaintiff did not know of the Hutson contract, nor was she shown a copy of such contract, and she did not know that defendant could not transfer her interest in the property without the

written consent of the seller; that on or about July 10, 1947, the real-estate broker prepared a contract in accordance with the terms set forth above; that thereafter plaintiff took her copy of the contract to her attorney; that the contract contained a clause that it was subject to a contract between Audrey Jenkins and E. W. Hutson and Mary Hutson; that plaintiff's attorney, upon investigation of the Hutson contract, ascertained that it contained a clause against selling or assigning without the written consent of the seller; that thereupon the seller was for the first time informed of the pending deal; that the transaction pending between plaintiff and defendant was brought to the attention of Mrs. Hutson, and she thereupon refused to give her consent in writing to such sale or assignment; that thereupon plaintiff asked that her money be returned to her, since defendant could not sell the property to her, and defendant has failed and refused to return such money.

To this complaint defendant filed an answer and cross-complaint. The answer admitted and denied certain of the allegations of the complaint, and as a first affirmative defense, alleged that on July 10, 1947, the parties entered into a written contract, copy of which is attached to the answer and made a part thereof; that pursuant to such contract, plaintiff, on July 10, 1947, moved into the house, and assumed complete control and possession, including collection of rents from the tenants on August 1st; and that she had ever since been, and was at the time the complaint was drawn, in possession of the premises, and collecting the rents from the other occupants of the premises. It was further alleged that plaintiff was in default on the contract for the payment of one hundred dollars due August 10, 1947, and the payment of one hundred dollars due September 10, 1947; that plaintiff had refused to surrender possession of the premises.

For a second cause of action, defendant adopted the allegations of her first affirmative defense, and then alleged that since plaintiff had been in possession of the premises she had damaged same by alterations and neglect in the sum

of three thousand dollars. Defendant prayed for judgment that plaintiff's action be dismissed; that the contract between plaintiff and defendant be adjudged canceled and any payments made thereunder forfeited as liquidated damages; that defendant be adjudged to be entitled to immediate possession of the premises; that she be adjudged entitled to rent at the rate of one hundred fifty dollars per month from September 10, 1947; that she be awarded the sum of three thousand dollars for damage to the premises, and her costs and disbursements herein.

Plaintiff filed an amended reply to the answer and cross-complaint of defendant, in which she denied that she ever entered into any contract on July 10, 1947, or that she ever signed any contract in which the defendant was vendor, other than a certain earnest-money receipt, designated as defendant's exhibit C, dated July 9, 1947. Plaintiff admitted that she moved into the house on July 10th, and that she did so pursuant to the earnest-money receipt, but denied that she entered the property in pursuance of any contract other than the earnest-money receipt. She denied that she collected rents from the tenants on August 1, 1947, but admitted that she collected certain rentals from the house amounting to the sum of seventy-four dollars, which accrued and became payable after September 1, 1947, and that she moved from the premises September 12, 1947. She denied that she is in default on any contract; admitted that she received notice of cancellation and forfeiture by registered mail; denied that the rental value of the premises is one hundred fifty dollars; and denied that she had damaged the property in the sum of three thousand dollars, or any other sum.

The matter came on for hearing before the court on January 23, 1948, and thereafter witnesses were sworn and testified and certain exhibits were introduced. On February 3, 1948, the court made and entered a memorandum decision, and on February 9, 1948, the court made and entered findings of fact, conclusions of law, and judgment favorable to plaintiff. The court found that plaintiff took possession of the premises on August 1, 1947, and continued in pos-

session until September 12, 1947; that during that time she attempted to convert a portion of the downstairs into a three-room apartment; that as a result of these alterations the premises were damaged in the sum of one thousand dollars. The court further found that the contract drawn by Dale Brady and submitted to plaintiff was never signed by her. The court further found that Mrs. Hutson never gave her consent to an assignment. Judgment was entered in favor of plaintiff for the sum of $1,049.49 and costs. Defendant gave timely notice of appeal from the judgment entered February 9, 1948.

The assignments of error are in finding for respondent and granting judgment against appellant; in deciding as a matter of law that the contract prepared by Dale Brady was never executed; in finding as a matter of law that respondent could rescind because of the restraint on alienation in appellant's executory contract by which she acquired the property; and in awarding judgment against appellant.

It is not too clear from the complaint what theory respondent may have had relative to this action, but there is no question but what the case was tried and decided upon the theory that appellant had only a vendee's interest in the property with which we are here concerned, under a contract from the Hutsons, which contract contained the provision against assignment heretofore set out, and to which we have referred; and that, inasmuch as appellant did not procure the consent of the Hutsons to the sale to Mrs. Erckenbrack, respondent was entitled to return of the money she had paid on the purchase price, less the damage which the court found she had done to the property during the time she was in possession.

Respondent in her brief, however, makes the claim that the only writing ever signed by her was the earnest-money receipt, to which we have heretofore referred; that under and pursuant to that receipt, a policy of title insurance or an abstract was to be furnished to her within thirty days from July 9, 1947, and if any defects should be found in the title, the purchaser would notify the seller within thirty days after the delivery of such title insurance or abstract,

and the seller would have thirty succeeding days in which to cure such defects. It is further contended that no abstract or title insurance was ever furnished to her, as provided in the earnest-money receipt; and that she is therefore entitled to a return of the money paid by her.

The testimony of Mrs. Erckenbrack follows in a general way the allegations of her complaint, and is to the effect that she went to Olympia on July 9, 1947; that she contacted Mr. Brady and went with Mr. Brady's representative to look at the Jenkins property at 1015 east State avenue, in Olympia; that after looking at the property she decided that she liked it and thereafter returned to the real-estate office, where she paid Mr. Brady one hundred dollars, and signed and received an earnest-money receipt. This earnest-money receipt does contain a provision as follows:

"I agree to furnish to the buyer for examination, at my option, a policy of title insurance, or an abstract of title covering said property, complete to this date, for examination, within 30 days from this date. If any defects shall be found in the title, which shall affect its marketability, the purchaser shall so notify me in writing within 30 days, after the delivery of such title policy or abstract to him and if such defect cannot be, or is not cured within the next succeeding 30 days, then this agreement shall be void and the earnest money shall be returned to the purchaser."

On July 10, 1947, Mrs. Erckenbrack again went to the Brady office and paid the additional amount of the down payment of nineteen hundred dollars, and also paid the prorated share of a year's taxes and insurance. On this date, Mr. Brady had prepared a formal contract between Audrey Jenkins, a single woman, called seller, and Frieda Erckenbrack, purchaser, which contract described the property, and contained, among others, the following provisions:

"Subject to contract between Audrey Jenkins and E. W. Hutson and Mary Hutson.

"The terms and conditions of this contract are as follows: The purchase price is Eleven Thousand ($11,000.00) Dollars, of which Two Thousand ($2,000.00) Dollars has been paid, the receipt whereof is hereby acknowledged, and the balance of said purchase price shall be paid as follows:

"The sum of $100.00, or more on the 10th day of August, 1947, and the further sum of $100.00 or more on the 10th day of each and every month thereafter until the full purchase price shall have been paid, together with interest on deferred payments at the rate of 6% per annum. Said monthly installments shall apply first on account of said interest, and the balance on the principal.

"The purchaser is entitled to take possession of said premises on August 1, 1947. . . .

"Time is of the essence of this contract. In case the purchaser shall fail to make any payment of the said purchase price promptly at the time the same shall fall due as hereinbefore specified, or promptly to perform any covenant or agreement aforesaid, the seller may elect to declare forfeiture and cancellation of this contract and upon such election being made all rights of the purchaser hereunder shall cease and determine and any payments theretofore made hereunder by the purchaser shall be retained by the seller in liquidation of all damages sustained by reason of such failure. Service of all demands, notices or other papers with respect to such declaration of forfeiture and cancellation may be made by registered mail at the following address, to-wit:——————————or at such other address as the purchaser will indicate in writing to the seller. Or the seller may elect to bring action, or actions, on any intermediate overdue installment, or on any payment, or payments, made by the seller and repayable by the purchaser, it being stipulated that the covenant to pay intermediate installments or to pay items repayable by the purchaser, are independent of the covenant to make a deed and that every such action is an action arising on contract for the recovery of money only, as if the promise to pay had been expressed in a different instrument, and that no such action shall constitute an election not to proceed otherwise as to any subsequent default, and no waiver by the seller of any default on the part of the purchaser shall be construed as a waiver of any subsequent default."

Mrs. Erckenbrack admits that Mr. Brady read this contract to her, but she says he did not explain it to her. However, she took a copy of the contract. She was then informed that she could not have possession of the premises until August 1st, but that she could live in one room of the house; and she did immediately, on July 10th, move into one room of the premises, and on August 1st apparently

assumed entire jurisdiction over the premises, and thereafter collected rents from occupants of the premises in the amount of seventy-four dollars.

Mrs. Erckenbrack testified that on or about August 4th she went to the real-estate office and asked them if she could see the abstract or deed or something to the property; that it was not shown to her; that "they said they couldn't." Thereafter, on the same day, she went to see Mr. Derig, an attorney in Olympia, who apparently examined the contract which had been prepared by Mr. Brady, and, seeing the provision that it was subject to a contract with Mr. and Mrs. Hutson, made an investigation and discovered that the Hutson contract contained the provision against assignment, to which we have heretofore referred, and advised Mrs. Erckenbrack that she should not sign the contract until the consent of Mrs. Hutson was procured. Mrs. Erckenbrack testified that was the first time she knew that anyone else had an interest in the property.

What appeals to us as the strange part of Mrs. Erckenbrack's action is that, after receiving this information from Mr. Derig, she, by her own admissions, continued to occupy the premises, and to make changes and alterations therein, practically up to the time she vacated them, and to collect rent therefrom, although in one place in her testimony she stated that she had decided on August 4th not to go through with the contract.

Apparently about the 8th or 9th of August there was a meeting in the office of Mr. Parr and Mr. Derig, both of whom represent Mrs. Erckenbrack in this action, at which time all parties here concerned were present, including Mrs. Hutson. There was apparently considerable talk and discussion at that meeting. However, we fail to find anywhere in Mrs. Hutson's testimony a statement to the effect that she ever said she would not agree to an assignment of her contract with Miss Jenkins to Mrs. Erckenbrack, or that she would not agree that a new contract between Miss Jenkins and Mrs. Erckenbrack could be entered into. As a matter of fact, she stated several times that she was willing to

agree to an assignment, if the parties to this action could agree. For instance, Mrs. Hutson was asked on cross-examination:

"Q. Do you remember Mr. Brady asking you if you would agree to the sale of this property of Mrs. Jenkins to Mrs. Erckenbrack? A. Yes. Q. What was your answer to that? A. I said if they could agree . . . Q. You didn't agree to it because of some difficulty you thought existed? A. No, that wasn't it. The difficulty was that it looked to me like I was going to be holding the sack. Q. In what way? A. Well, Mrs. Erckenbrack didn't understand what she was getting into. She was high-pressured into some deal that she didn't understand."

It does not appear in the record why Mrs. Erckenbrack did not sign the contract prepared by Mr. Brady at the time it was read to her on July 10th. It appears that this contract, together with the deed from Miss Jenkins, was deposited in the Seattle First National Bank, where the money was to be paid. Mr. Brady's testimony was to the effect that, at the meeting of August 8th, Mrs. Hutson agreed to an assignment, or possibly a new contract, and further stated that she would leave it to Mr. Parr, her attorney. Mr. Brady testified that he had examined the property, and that it was worth from one thousand to fifteen hundred dollars less than it was when Mrs. Erckenbrack took possession, because of the alterations she had made and the condition in which she left it.

Let us examine the contention of respondent that it was necessary to have the written consent of Mrs. Hutson to an assignment of the Jenkins-Hutson contract, or to the execution of a new contract, before Miss Jenkins could enter into a binding and valid executory contract to convey the property to respondent.

The general rule, as announced in 148 A. L. R. 1362, is as follows:

"As to the general effect of a prohibition against assignment in a land contract or lease without the consent or approbation of the vendor or lessor, it has been generally stated that such a provision is for the benefit of the vendor or lessor, that only he, or those claiming through him, can

take advantage of such a provision, and that if he does not choose to do so, no one else can."

In that annotation the case of *Sequin v. Plano,* 160 Wash. 421, 295 Pac. 179, is cited. We quote from that case:

"Appellant argues that written consent was not given by the lessor to the assignment of the lease, and seeks to invoke the provision of the contract prohibiting the assignment of the lease without the written consent of the lessor. That question can be raised only by the lessor, who is not here complaining.

" 'The restriction is for the benefit of the vendor, and he alone can insist on its enforcement, and may waive its benefits. An oral assent to an assignment is a waiver of a provision prohibiting an assignment without the vendor's written assent. The same effect is given to the acceptance of payment from the assignee with knowledge of the assignment.' 27 R. C. L., p. 566, § 306."

In the instant case, it does not appear that Mrs. Hutson was complaining, or that she ever disturbed the possession of Mrs. Erckenbrack in the property. It appears from the Hutson-Jenkins contract that a payment of eighty-two dollars was due on August 10, 1947, and on the 10th of each succeeding month, until the full amount of the purchase price was paid. The terms of the Jenkins-Erckenbrack contract provided for payment of one hundred dollars on August 10, 1947, and the further sum of one hundred dollars on the 10th of every month thereafter. Of the one hundred dollars to be paid each month by Mrs. Erckenbrack, Mrs. Hutson was to receive eighty-two dollars.

When Mrs. Erckenbrack failed to make the payment due on August 10, 1947, appellant promptly paid Mrs. Hutson the amount due on the Hutson contract on that date, and has since made all payments due under the contract to keep it in good standing. It does not appear that Mrs. Hutson would have refused to accept the payments due on her contract from the amount paid by Mrs. Erckenbrack, and if the latter had made the payments due under the contract of July 10, 1947, the Hutson contract would have been paid out before Miss Jenkins was required to convey to respondent.

█ We have repeatedly held that the fact that a vendor in a contract for the sale of land is not the owner thereof at the time of making the contract is not of itself ground for rescission on the part of the purchaser, but it must appear that the vendor cannot or will not perfect a title thereto. It is a question of conveying the title, or having it conveyed, to a purchaser when the time of performance comes. See *Sevigny v. O'Neill,* 154 Wash. 393, 282 Pac. 215, and cases therein cited; *Townsend v. Rosenbaum,* 187 Wash. 372, 395-6, 60 P. (2d) 251.

█ We are satisfied that, regardless of the fact that Mrs. Erckenbrack did not sign the contract prepared by Brady on July 10th, there is in the record ample evidence of a ratification by her of that contract, and it is our opinion that by such ratification it became in fact her contract.

Relative to the necessity of signing the contract, in the case of *Van Geest v. Willard,* 27 Wn. (2d) 753, 764-5, 180 P. (2d) 78, in considering this question we quoted from 66 C. J. 544, § 83, the opinion reading as follows:

"In 66 C. J. 544, § 83, it is stated that, as a general rule, a written agreement cannot be considered as a completed contract for the sale of land until it is signed by all the parties. However, the following exception to the rule is then set out:

" 'Nevertheless, subject to the requirements of the statute of frauds, it may be competent for the parties to adopt a writing as their contract without either party signing, or without both parties signing, and a contract signed by one of the parties only may be binding on both, if accepted and acted on by the other. Thus a contract signed by the vendor only may be binding on both parties when accepted and acted on by the purchaser, and a contract signed by the purchaser alone may be valid when acted on by the vendor.'

"In the case of *Bulmon v. Bailey,* 22 Wn. (2d) 372, 156 P. (2d) 231, we recognized the principle above announced and held that the vendee, or purchaser, under a real estate contract was bound by the terms of such contract, although she did not sign the same, it being signed only by the vendors. We stated:

" 'We regard this omission as of no importance, as respondent [vendee] accepted the contract and became bound thereby.' "

And so in the instant case, we are of the opinion that the evidence conclusively shows that, even conceding that Mrs. Erckenbrack did not know of the provisions of the Hutson contract until August 4, 1947, she was on that date informed thereof. But she thereafter continued in possession of the premises, collected rents and made alterations thereon, and it was only in pursuance of the contract of July 10, 1947, and the provisions thereof, that she was given possession of the premises on August 1, 1947. However, if it be considered that the earnest-money receipt was the only agreement which she ever signed, we are of the opinion that she is in the same position relative to that agreement, in that she never demanded of Miss Jenkins to see an abstract or certificate of title insurance. But even conceding that she made some such demand on Brady on August 4th, again she proceeded thereafter to do the things which we have hereinbefore enumerated, which, to our minds, clearly indicates a waiver of any such demand.

It may be further stated that there is no evidence in the record that Mrs. Erckenbrack ever made any tender of the rents which she had received, or any offer to do what might be considered equity. In this regard, we have in mind the testimony that a considerable part of the alterations which Mrs. Erckenbrack started to make were never completed, and were left in a condition which required considerable work and expenditure of money to complete.

The case relied upon by respondent is *Park v. McCoy,* 121 Wash. 189, 208 Pac. 1098, which respondent claims is directly in point here. We have examined that case with care, and do not feel that it is controlling here. The cited case deals with an earnest-money receipt, and of course is cited in support of respondent's contention that the earnest-money receipt signed by her was the only writing or agreement ever signed by her in this case. It may be stated that in the *Park* case the opinion refers to a nonassignable clause as follows:

"In the court below and here, the respondents have contended that this case must fall because the contract whereby McCall, the original owner, agreed to sell this particular

property or a part of it to appellant expressly provided that the appellant should not assign or transfer it, and that, since McCall at all times refused to permit such transfer or sale, the consideration for the original check given by the respondents failed. The trial court seems to have been led into this error. This feature of the case is unimportant. The McCall contract simply forbade the appellant assigning or transferring it, or any interest in it. The appellant did not undertake to violate that provision. He was not selling or transferring to the respondents the contract or his interest in it, but was giving an entirely new and independent contract of sale to the respondents."

The real reason assigned for our opinion in the cited case was that the formal contract which was drawn subsequent to the earnest-money receipt did not describe the same property as was described in the earnest-money receipt. A further reason, as shown by the opinion, was that the earnest-money receipt contemplated that the appellant was the real owner of the property at all times in question.

If it could be contended that respondent in the instant case, at the time the earnest-money receipt was signed, had the idea that Miss Jenkins was the real owner of the property, she was certainly informed to the contrary on August 4, 1947, when she took the Brady contract to her attorney, even if it be admitted that she did not see in the contract itself a plain reference to the Jenkins-Hutson contract.

■ ■ Our determination that the contract of July 10, 1947, was binding on respondent makes her action herein, in effect, one for rescission of contract. We have many times held that such an action is equitable in nature, and that equitable principles are to be applied. *Hopper v. Williams*, 27 Wn. (2d) 579, 587, 179 P. (2d) 283. We stated in the cited case that, based on the principle that one who seeks equity must do equity, it is the general rule that one who demands rescission of a contract of purchase to which he is a party must restore, or offer to restore, to the other party whatever he may have received under the contract in the way of money, property, or other consideration or benefit. We also stated in the cited case that, while restoration of the *status quo*, or an offer to make restoration, was not a

condition precedent to the commencement or maintenance of an action for the rescission of a contract for the purchase of land, it was necessary to show a willingness to do equity. The opinion states:

"In the instant case, appellants made no offer and expressed no willingness, either in their complaint or in their evidence at the trial, to make any restoration or do any equity whatever. This failure, or refusal continued even after it had been called to their attention at the first close of their case and after the case was reopened, at their own request, for that very purpose. The trial court was therefore fully justified in dismissing the complaint upon that ground."

We affirmed the judgment of the lower court which dismissed the complaint, canceled the contract involved, and forfeited to the seller the payments theretofore made by the purchaser.

In the instant case, respondent, while holding possession of the premises, failed to make the payments due under the contract on August 10, 1947, and September 10, 1947. She started to make alterations of the premises, which, at the time she vacated the premises, were not completed, and which damaged the premises at least to the extent of one thousand dollars. She collected rents.

Respondent did not in her complaint, nor did she at the trial, offer or express a willingness to make any restoration or do any equity whatsoever.

We are clearly of the opinion that, under the facts and the law applicable thereto, respondent has established no legal justification for a return of the payments made by her on the purchase price.

In this case, appellant, in her cross-complaint, has asked, in addition to a cancellation of the contract and a forfeiture of the amounts paid by respondent, that she have judgment for the rents collected by respondent and damages in the sum of three thousand dollars.

We are of the opinion that, under appellant's theory, respondent was in lawful possession of the premises under the contract of July 10, 1947, from August, 1947, until noti-

fied by appellant to surrender the premises for failure to comply with the contract. This being true, it is our further opinion that under the contract the only damages to which appellant is entitled are the amounts paid by respondent on the purchase price, which amounts appellant is entitled to retain as liquidated damages.

We are therefore of the opinion that the trial court erred in concluding that respondent was entitled to a judgment for the return of her earnest money, less the sum of one thousand dollars damages, and in refusing to cancel the contract of July 10, 1947, and declare a forfeiture of the amount paid by respondent as liquidated damages.

For the reasons herein assigned, the judgment of the trial court is reversed, and the cause is remanded, with instructions to enter judgment canceling the contract of July 10, 1947, forfeiting the amounts paid thereunder on the purchase price, as liquidated damages, adjudging appellant to be entitled to the possession of the premises, and decreeing respondent to have no right, title, or interest in and to the premises or any part thereof.

BEALS, STEINERT, MALLERY, and HILL, JJ., concur.