[No. 52748-7-I.   Division One.   August 23, 2004.]

BELLEVUE SQUARE MANAGERS, INC., *Respondent*, v. GRS CLOTHING, INC., *Defendant*, KOLONAKI PROPERTIES, INC., *Appellant*.

*William J. Morris*, for appellant.

*David A. Nold* and *Brian M. Muchinsky* (of *Nold & Associates, P.L.L.C.*), for respondent.

¶1 AGID, J. — Bellevue Square Managers, Inc. (BSM), brought an unlawful detainer action against tenant GRS Clothing, Inc. (GRS). Kolonaki Properties, Inc. (KPI), intervened, claiming that GRS assigned the lease to them and no longer occupied the premises. BSM then brought an unlawful detainer action against KPI. The trial court concluded that the lease assignment between GRS and KPI was invalid and directed a writ of restitution against both GRS and KPI. KPI appeals, arguing the trial court lacked jurisdiction. We hold the trial court had jurisdiction because BSM voided the lease assignment between GRS and KPI, making GRS the tenant in possession and divesting KPI of color of title. We affirm.

## FACTS

¶2 In 1993, a national clothing company called Georgiou Retail Stores, now known as GRS Clothing, Inc., entered into a 10 year lease with Bellevue Square Managers, Inc., for retail space in a Bellevue shopping mall. The lease's "Assignment and Subleasing" provision required BSM's written consent to assign the lease unless GRS assigned it to one of its affiliates and if GRS was not in default. The lease also included several other conditions that GRS must meet in order to assign the lease without BSM's permission.

¶3 In October 2001, BSM began issuing notices to GRS stating that it was in default and must cure the defaults or risk eviction. These defaults included overdue rent payments, maintenance charges, and property taxes, as well as

failing to report annual gross sales and advertising expenses as required by the lease.

¶4 Also in October 2001, GRS asked BSM for consent to assign its lease to a GRS subsidiary company called Kolonaki Properties, Inc.[1] On October 17, 2001, BSM responded by asking for more information about KPI, noting that GRS could not assign its lease while in default. In a letter dated October 28, 2001, GRS asserted that because the lease permitted a tenant to assign its lease to an affiliate without obtaining landlord approval and KPI was a GRS subsidiary, GRS could assign its lease to KPI without BSM's approval. In its November 11, 2001 response, BSM reminded GRS that it was in default and said that regardless of KPI's status as an affiliate, GRS could not assign the lease while in default.

¶5 Despite its default status, GRS assigned its lease to KPI on October 3, 2001.[2] After the assignment, the retail space continued to operate as a Georgiou store, BSM continued to address its monthly invoices to GRS, and GRS submitted the sales and advertising reports required by the lease. KPI and an entity called Georgiou Properties, Inc., made rent payments after the purported assignment,[3] and all payments were sent in envelopes with "Georgiou" listed as the return address.

¶6 BSM continued to issue notices of default to GRS until October 2002, at which point GRS was put into involuntary bankruptcy proceedings. On March 3, 2003, BSM brought an unlawful detainer action against GRS (GRS action) because an order of bankruptcy had been entered against GRS and the bankruptcy trustee did not assume the lease. KPI intervened, claiming that because

---

[1] KPI and GRS have the same business address and are owned by the same person.

[2] GRS transferred the assets of approximately 16 stores to KPI during that time.

[3] The record indicates that KPI made rent payments in October, November, and December 2001, and Georgiou Properties, Inc., made payments in January and February 2002.

GRS had assigned the lease to KPI, KPI was the current tenant and the unlawful detainer action against GRS had to be dismissed. On March 20, 2003, BSM initiated an unlawful detainer action against KPI (KPI action), alleging that the assignment to KPI was invalid and thus KPI, as the alleged tenant, had possession without the landlord's permission and without color of title.

¶7 The trial court consolidated the two actions, conducted a bench trial, and issued a memorandum opinion concluding that GRS's lease assignment to KPI was invalid and KPI had no rights under the lease. The court directed the entry of a writ of restitution against both GRS and KPI. It also directed KPI to pay attorney fees and costs to BSM. KPI appeals.

## DISCUSSION

### I. *Validity of Lease Assignment*

¶8 KPI argues that the trial court lacked subject matter jurisdiction in the unlawful detainer actions because GRS did not possess the premises and KPI was a lawful tenant with color of title. These arguments turn on the validity of the assignment between GRS and KPI, and the trial court concluded that the assignment was invalid. We review conclusions of law de novo.[4]

¶9 "An assignment of a lease occurs when the lessee transfers his whole interest therein without retaining any reversionary interest."[5] An "absolute" assignment divests the assignor of all rights in the leasehold and any authority

---

[4] *Bingham v. Lechner*, 111 Wn. App. 118, 127, 45 P.3d 562 (2002) (citing *City of Seattle v. Megrey*, 93 Wn. App. 391, 393, 968 P.2d 900 (1998)), *review denied*, 149 Wn.2d 1018 (2003); *Miller v. Badgley*, 51 Wn. App. 285, 290, 753 P.2d 530 (citing *Holland v. Boeing Co.*, 90 Wn.2d 384, 390, 583 P.2d 621 (1978)), *review denied*, 111 Wn.2d 1007 (1988).

[5] *Morrison v. Nelson*, 38 Wn.2d 649, 657, 231 P.2d 335 (1951) (citing *McDuffie v. Noonan*, 176 Wash. 436, 29 P.2d 684 (1934); 32 Am. Jur. *Landlord and Tenant* § 313, at 289).

over the assignee,[6] while a "conditional" assignment allows the assignor to retain the right of reentry if the assignee breaches a condition.[7] When a tenant absolutely assigns its rights to an assignee and thus no longer possesses the premises, a court has no jurisdiction over that tenant.[8]

¶10 Here, KPI argues that the purported assignment was absolute, and BSM does not dispute this contention. Therefore, according to KPI, GRS assigned away its right to possession and the court could not have jurisdiction over it. But GRS assigned its rights to KPI without fulfilling one of the conditions for assignment: the lease permitted assignment without BSM's consent *as long as GRS was not in default*, and GRS was in default at the time it assigned the lease to KPI.

¶11 KPI argues this is irrelevant, however, because an otherwise invalid assignment is valid between the assignor and the assignee. An assignment made in violation of a lease restriction is not void but rather is "good as between the assignor and assignee, *subject to whatever rights the lessor may have*."[9] In other words, while an otherwise invalid assignment is valid between the assignor and assignee, it is nevertheless voidable by the landlord.[10] BSM argues that this rule does not apply here because the rule is derived from cases involving the tenant's failure to obtain the landlord's consent to assign the lease, which is not at issue here.[11] But the Washington Supreme Court held that

---

[6] *Brickum Inv. Co. v. Vernham Corp.*, 46 Wn. App. 517, 522, 731 P.2d 533 (1987) (citing *Olin v. Goehler*, 39 Wn. App. 688, 691, 694 P.2d 1129, *review denied*, 103 Wn.2d 1036 (1985)).

[7] *Id.* (citing *State v. Meador*, 60 Wn.2d 543, 545, 374 P.2d 546 (1962)).

[8] *Id.*

[9] *Morrison*, 38 Wn.2d at 659 (emphasis added) (citing *Dyer Bros. Golden W. Iron Works v. Pederson*, 112 Wash. 390, 192 P. 622 (1921); *Klee v. United States*, 53 F.2d 58 (9th Cir. 1931); 32 Am. Jur. *Landlord and Tenant* § 325, at 296; 51 C.J.S. *Landlord and Tenant* § 34, at 546).

[10] *OTR v. Flakey Jake's, Inc.*, 112 Wn.2d 243, 247, 770 P.2d 629 (1989) (citing *Morrison*, 38 Wn.2d at 649; *Seguin v. Plano*, 160 Wash. 421, 295 P. 179 (1931)).

[11] *See Morrison*, 38 Wn.2d at 659 (citing *Seguin*, 160 Wash. 421; *Erckenbrack v. Jenkins*, 33 Wn.2d 126, 204 P.2d 831 (1949); *Bemis v. Wilder*, 100 Mass. 446

"[a]n assignment in violation of a restriction is not void, but voidable at the option of the lessor"[12] suggesting that the rule applies when *any* type of restriction is violated. The court has also reasoned that an invalid assignment is voidable by the landlord because " '[r]estrictions against assignment or subletting imposed by the terms of the lease are intended for the benefit of the lessor . . . .' "[13] *Any* restrictions on assignment are for the landlord's benefit, so it logically follows that the landlord may void an agreement made in violation of *any* of the restrictions.

¶12 We conclude that even though the assignment in this case may have been valid between GRS and KPI, BSM's actions constructively voided the assignment. In two letters written after GRS assigned the lease to KPI, BSM reminded GRS that it could not assign the lease while it was in default. BSM also continued to address its monthly invoices to GRS. The record contains no indication that BSM ever consented, explicitly or implicitly, to the assignment. Nor does the record indicate that GRS cured its default so that it could assign its lease without BSM's consent. In fact, it is unclear whether BSM even knew that GRS had assigned the lease to KPI. The store continued to operate unchanged, two different entities paid rent, the return address on the rent checks said "Georgiou," and GRS filed sales and advertising reports after the purported assignment had taken place. BSM had the right to void the assignment, and it did so by reiterating that GRS could not assign its lease and by conducting business with GRS as if no assignment had taken place. We hold that BSM voided the assignment, thus rendering it invalid.

(1868) ("Accordingly, the invalidity of an assignment, *on the ground that it has not been assented to by the lessor,* can be raised only by the lessor." (emphasis added)). *Validity and Effect, as between Assignor and Assignee or Claimants under Them, of Assignment by Purchaser Under Land Contract, or by Tenant Under Lease, as Affected by Provision of Contract or Lease Restricting or Prohibiting Assignment,* 148 A.L.R. 1361, 1362) (1944). *See also OTR,* 112 Wn.2d at 247. Rather than adopting the "voidable by the lessor" rule in this case, BSM urges the court to simply invalidate the assignment.

[12] *Morrison,* 38 Wn.2d at 659.

[13] *OTR,* 112 Wn.2d at 248 (quoting 51C C.J.S. *Landlord and Tenant* § 33c (1968)).

## II. *Invalid Assignment's Effect on Trial Court Jurisdiction*

### A. *GRS Unlawful Detainer Action*

¶13 According to KPI, GRS assigned all of its rights in the leasehold to KPI and thus retained no rights in, nor did it have possession of, the premises. And because GRS did not possess the premises, KPI argues, the trial court had no jurisdiction over the GRS action. But because the assignment was invalid as to BSM, GRS remained the tenant in possession. The trial court therefore had subject matter jurisdiction over GRS in the first unlawful detainer action.

¶14 KPI nevertheless argues that BSM was not entitled to terminate the lease without providing GRS with 10 days' notice and an opportunity to cure. KPI relies on RCW 59.12.030(4), which states that when a landlord initiates an unlawful detainer action for reasons other than the nonpayment of rent, including the breach of a covenant not to assign, the landlord must provide notice and an opportunity to cure the breach within 10 days. KPI argues that this provision applies because BSM attempted to evict GRS for assigning its lease without consent. But this is incorrect. The breach BSM alleged in the GRS action was not the inappropriate assignment but rather the GRS bankruptcy in which the trustee did not assume the lease. BSM was not required to comply with RCW 59.12.030(4) in this case.

### B. *KPI Unlawful Detainer Action*

¶15 The KPI unlawful detainer action was brought under RCW 59.12.030(6), which states that a person who enters upon another's land without the permission of the owner and without having color of title is guilty of unlawful detainer if he or she does not leave after three days' written notice. KPI argues that because GRS granted its rights in the leasehold to KPI, KPI had color of title.

¶16 RCW 59.12.030(6) does not define color of title, and the Washington cases that appear to define the term do so

in the context of adverse possession.[14] In 1917, the Supreme Court in *Bassett v. City of Spokane* stated, "Color of title is that which is a semblance or appearance of title, but is not title in fact nor in law. A claim to property under the terms of some conveyance, however incompetent to carry or pass the title, is strictly color of title."[15] The *Bassett* court also suggested that one must act in good faith in order to have color of title.[16] In 1991, this court reiterated the notion of good faith by stating, Color of title "must purport to pass title," and "[t]he claimant must believe it to be a valid title."[17] Here, KPI argues that it had color of title because the assignment purported to pass title, even if it was ultimately voidable.

¶17 The trial court concluded that because the assignment was never valid, KPI did not have color of title. In reaching this conclusion, the court compared this case to *Puget Sound Investment Group, Inc. v. Bridges*.[18] There, the Internal Revenue Service foreclosed on Bridges' residence and sold it at a tax sale to the Puget Sound Investment Group. Bridges refused to surrender possession because he had a statutory warranty deed, and Puget Sound initiated an unlawful detainer action under RCW 59.12.030(6). We stated that Bridges' statutory warranty deed gave him color of title.[19] Relying

[14] *See Daubner v. Mills*, 61 Wn. App. 678, 811 P.2d 981 (1991); *Bassett v. City of Spokane*, 98 Wash. 654, 168 P. 478 (1917).

[15] 98 Wash. 654, 656, 168 P. 478 (1917) (citing *Wright v. Mattison*, 59 U.S. (18 How.) 50, 15 L. Ed. 280 (1855); *Mullan's Adm'r v. Carper*, 37 W. Va. 215, 16 S.E. 527 (1892); *Swann v. Thayer*, 36 W. Va. 46, 14 S.E. 423 (1892); *Swift v. Mulkey*, 17 Or. 532, 21 P. 871 (1889); *Paragould Abstract & Real Estate Co. v. Coffman*, 100 Ark. 582, 140 S.W. 730 (1911); *Beverly v. Burke*, 9 Ga. 440 (1851); *Jasperson v. Scharnikow*, 150 F. 571 (9th Cir. 1907); 2 C.J. 169; 1 R.C.L. 707).

[16] *Id.* at 656-57.

[17] *Daubner*, 61 Wn. App. at 682 (citing WALTER G. ROBILLARD & LANE J. BOUMAN, CLARK ON SURVEYING AND BOUNDARIES § 22.06 at 615 (5th ed. 1987)).

[18] 92 Wn. App. 523, 963 P.2d 944 (1998). This case is one of few cases discussing color of title in the unlawful detainer context.

[19] We went on to hold that because unlawful detainer actions "do not provide a forum for litigating claims to title", *id.* at 526, Puget Sound must first establish superior title in a quiet title action before bringing an unlawful detainer action. *Id.* at 527.

on this case, the trial court determined that KPI never had color of title because the *Puget Sound* defendant "had clearly held valid title at one point."

¶18 We conclude that KPI lacked color of title. First, the trial court's distinction between once holding a valid title and never holding a valid title is sound. And second, under Washington case law, one cannot possess color of title if it knows that the title is invalid. Here, because BSM proceeded in a matter inconsistent with a valid assignment between GRS and KPI, it is reasonable to conclude that KPI never believed it had valid title. Therefore, we hold that KPI did not have color of title and the trial court had subject matter jurisdiction in the KPI unlawful detainer action.

III. *Attorney Fees*

¶19 BSM requests attorney fees on appeal. Because the lease contains an attorney fees provision, we grant this request.[20]

¶20 We affirm.

GROSSE and BECKER, JJ., concur.

Reconsideration denied October 7, 2004.

---

[20] *See* RCW 4.84.330 (a court may award attorney fees to a prevailing party in an action on a lease if the lease contains an attorney fees provision).