# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DANIEL KRULL and MAUREEN KRULL, | No. 47188-4-II |
| Respondents, | |
| v. | |
| AIKO LAWSON, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. – Aiko Lawson appeals the writ of restitution and judgment awarded against her in this unlawful detainer action filed by her landlords, Daniel and Maureen Krull. She argues that the improper service of the unlawful detainer notice and eviction summons deprived the trial court of jurisdiction, that the underlying lease addendum was the result of coercion and duress, and that the evidence does not support the trial court's finding that she defaulted in paying rent. Because service of both the notice and summons complied with the statutory requirements, and because substantial evidence supports the trial court's findings that the lease addendum was not the result of coercion and duress and that Lawson was not current in paying her rent, we affirm and grant the Krulls' request for attorney fees on appeal.

## FACTS

Lawson and the Krulls entered into a one-year residential lease that started April 15, 2014. Under the lease, Lawson's rent of $1,250 was due before the 10th day of each month. The Krulls' mortgage payment on the residence was due by the 15th of each month. Lawson made an initial rent payment when she signed the lease, but she was late with the next payment in May. In response, the Krulls renegotiated the terms of the lease with Lawson to make her rent due on the

first day of the month. Lawson signed the lease addendum on May 30, and Daniel Krull signed it on June 2. Both signatures were notarized.

When Lawson failed to pay rent on December 1, the Krulls issued a three-day notice to pay rent or vacate. The Krulls completed service of this notice on December 4 by posting a copy of the notice at the residence and mailing it there. The Krulls also served Lawson with a 10-day notice to comply with the lease regarding payment of overdue late fees and the removal of dogs that violated the lease terms.

After Lawson failed to pay the December rent or vacate the property, the Krulls filed a complaint for unlawful detainer on December 9. This complaint, along with the eviction summons, payment statement, motion and declaration for order to show cause, and the order to show cause, was served on a young man at the Lawson residence who identified himself as "Sam" and claimed to be Lawson's roommate. Clerk's Papers (CP) at 53.

In a written response to the complaint, Lawson asserted that she did not owe rent for December and January because the Krulls had changed the lease terms improperly. She also attached illegible bank statements to an addendum explaining that she was current in her rental payments under the terms of the original lease.

At the show cause hearing, Lawson contended that she signed the lease addendum under duress and maintained that she was current in her rent under the terms of the original lease agreement. Lawson also complained that the summons was served on her son, who was a minor. Because of the factual disputes between the parties, the judge set the matter for trial.

At trial, Daniel Krull testified that Lawson began to fall behind in her rent in May 2014. Fearing that her late payment would result in a default on his mortgage, Krull rejected Lawson's suggestion that he apply her security deposit to the delinquent rent. Instead, he presented Lawson

2

with the lease addendum that required rent payments by the first of the month, with a three-day grace period. Krull testified that Lawson struggled with subsequent rent payments until she failed to pay her December rent. He added that Lawson had paid $1,395 in late fees over the course of her tenancy.

Lawson testified that because the Krulls had made her change the due date for her rental payments, she was going to be late with those payments every month. She asserted that if the addendum was rescinded and the late fees applied to her rental obligations, her rent would be current through February 10, 2015. Lawson estimated that she had paid more than $2,800 in late fees. She explained that she obtained a loan to pay the rental and late fees on May 30, the date she signed the addendum.

Lawson testified further that she had been coerced into signing the addendum changing the due date. To support her contention, she introduced copies of text messages that she and Daniel Krull had exchanged. The trial court admitted the messages over the Krulls' authentication objection. Those messages show that Krull used profanity and threatened to evict Lawson, to render her homeless, and to blacklist her with area rental agencies if she did not vacate the premises or sign the addendum. In addition to her duress argument, Lawson contended that the addendum was invalid because her signature had not been notarized at the time of signing. During her cross-examination, Lawson admitted to being a party to previous eviction proceedings and to suing a different landlord the year before. She added that she wanted to remain in the Krull rental property until she could use her veteran's benefits to purchase her own home.

The trial court found that there was no duress sufficient to invalidate the lease addendum. The trial court also found that the Krulls had properly served the three-day notice as well as the eviction summons. The trial court granted the Krulls a judgment of $1,250 that excluded their

3

request for late fees and rental damages, and it awarded the Krulls attorney fees and costs of $1,500. The trial court also granted the Krulls an immediate writ of restitution. Lawson appeals.

ANALYSIS

I.    SERVICE OF THREE-DAY NOTICE AND EVICTION SUMMONS

Lawson argues that the trial court lacked jurisdiction over the unlawful detainer proceedings because the Krulls failed to properly serve the three-day notice and the eviction summons.[1] The trial court entered the following findings of fact and conclusions of law regarding service:

> **4.  Notice.**  On December 4, 2014, a Three Day Notice to Pay Rent or Vacate was served on defendant in accordance with RCW 59.12.040.  Defendant has failed to correct said default, has paid nothing to plaintiff subsequent to the service of said notice, are still in default, and / or have not vacated the premises.
> . . . .
> **7.  Summons.**  On Tuesday, December 9, 2014, defendant(s) was (were) served with the statutory summons allowing an Immediate Writ of Restitution without bond and defendant(s) has filed a written response to the Complaint.

CP at 69-70.

We review a trial court's findings of fact for substantial evidence, which is evidence sufficient to persuade a fair-minded person of the truth of the finding. *Harris v. Urell*, 133 Wn. App. 130, 137, 135 P.3d 530 (2006).  If substantial evidence supports the findings of fact, we consider whether the findings support the conclusions of law. *Harris*, 133 Wn. App. at 137.  We review conclusions of law and questions of law de novo. *Cogdell v. 1999 O'Ravez Family, LLC*, 153 Wn. App. 384, 390, 220 P.3d 1259 (2009).

---

[1] Lawson also mentions service of the 10-day notice that ripened during the pendency of the proceeding, but we do not address this notice because the trial court did not consider it.  A 10-day notice is required if a tenant is in breach of any covenant other than a covenant to pay rent.  RCW 59.12.030(4); *Bellevue Square Managers, Inc. v. GRS Clothing, Inc.*, 124 Wn. App. 238, 245, 98 P.3d 498 (2004).

A.    Service of Three-Day Notice

If a tenant breaches a rental agreement by failing to make timely rental payments, a landlord may commence an unlawful detainer action. *Christensen v. Ellsworth*, 162 Wn.2d 365, 370, 173 P.3d 228 (2007). An unlawful detainer action is a statutorily created proceeding that provides an expedited route to resolve the possessory right in property. *Christensen*, 162 Wn.2d at 370-71; *Hous. Res. Grp. v. Price*, 92 Wn. App. 394, 401, 958 P.2d 327 (1998).

The unlawful detainer statute authorizes a three-day notice to pay rent or vacate the premises for a tenant's default in paying rent. *Price*, 92 Wn. App. at 401; RCW 59.12.030(3). The purpose of the three-day notice is to provide the tenant with "'*at least* one opportunity to correct a breach before forfeiture of a lease.'" *Christensen*, 162 Wn.2d at 371 (quoting *Hous. Auth. of Everett v. Terry*, 114 Wn.2d 558, 569, 789 P.2d 745 (1990)).

A three-day notice to pay or vacate must be served in accordance with RCW 59.12.040. RCW 59.12.030(3); *Christensen*, 162 Wn.2d at 371. Compliance with the method of process in RCW 59.12.040 is jurisdictional. *Terry*, 114 Wn.2d at 564. If the tenant is unavailable for personal service, service may be effectuated by "'affixing a copy of the notice in a conspicuous place on the premises unlawfully held'" and sending an additional "'copy through the mail addressed to the tenant . . . at the place where the premises unlawfully held are situated.'" *Christensen*, 162 Wn.2d at 371 (quoting RCW 59.12.040(3)); *Leda v. Whisnand*, 150 Wn. App. 69, 85, 207 P.3d 468 (2009). Service by mail adds an additional day to the notice requirement; thus, a tenant is guilty of unlawful detainer four days after the notice is properly posted and mailed.[2] *Christensen*, 162 Wn.2d at 371. Once a tenant is guilty of unlawful detainer under RCW 59.12.030(3), a landlord may commence

---

[2] Lawson alleges in her reply brief that the envelope containing the three-day notice was postmarked December 6, thus making the December 9 unlawful detainer complaint premature, but she did not make this assertion during trial and the envelope is not part of the appellate record.

an unlawful detainer action by service and filing of the statutory summons and complaint. *Christensen*, 162 Wn.2d at 371; RCW 59.12.070.

The Krulls served the three-day notice by posting a copy on the door of the rental property and by mailing a copy to its address. Lawson offered no testimony challenging Daniel Krull's testimony describing that service or his written declaration of service. Accordingly, the trial court did not err in concluding that service of the three-day notice complied with the statutory requirements.

B. Service of Summons

Proof that the defendant was properly served with a statutory unlawful detainer summons is another jurisdictional requirement. *Christensen v. Ellsworth*, 162 Wn.2d 365, 372, 173 P.3d 228 (2007). The statute governing service states that "[t]he summons must be served and returned in the same manner as summons in other actions is served and returned." RCW 59.12.080. Former RCW 4.28.080(15) (2012) provides that in all cases other than those specified (which do not include unlawful detainer actions), a summons shall be served to the defendant personally, or by leaving a copy "at the house of his or her usual abode with some person of suitable age and discretion then resident therein."

The return of service declaration stated that a copy of the summons was served on Lawson by delivering it to "Sam," who identified himself as Lawson's roommate and who appeared to be of suitable age and discretion and a resident of the rental property.

Lawson argued below and in her opening brief that this service on Sam, her son, was invalid because he was a 17-year-old minor.[3] The Krulls responded by citing authority showing that

---

[3] Lawson's son did not testify at trial. Lawson offered to have him testify about her previous abusive relationship, but the Krulls stipulated to those facts. Lawson did not seek to have her son testify about the means of service.

6

service on a 15-year-old minor was deemed valid. *See Miebach v. Colasurdo*, 35 Wn. App. 803, 808, 670 P.2d 276 (1983) (upholding trial court's finding that 15-year-old foster daughter was person of suitable age and discretion for purposes of receiving service of process and noting that other courts have upheld service to minors that age), *aff'd*, 102 Wn.2d 170, 179, 685 P.2d 1074 (1984). Lawson then asserted for the first time in her reply brief that "Sam" was actually her son's friend and was waiting on the front porch for her son.

We decline to consider this new and unsupported assertion. Lawson's claim that her son was not eligible to receive service because he was 17 years old fails as a matter of law. Service of the summons was sufficient to satisfy the requirements of former RCW 4.84.080(15) and, in turn, the requirements of RCW 59.12.080. The trial court thus did not err in concluding that Lawson was served with the eviction summons.

II.     LEGALITY OF ADDENDUM

Lawson also argues that the lease addendum that triggered the unlawful detainer proceedings was unlawful because it was the result of coercion and duress and was improperly notarized. [4] We disagree.

A.     Duress

The trial court regarded this issue as the principal one at trial and addressed it as follows:

> The notion of duress in a court of law is not whether the transaction was pleasant, not whether it was voluntary—meaning both sides were happy to enter into it.
> But really whether somebody's free will was taken away either through threat of physical force or something else that was so improper that it would shock the conscience of the court and really it was not a person's free will.
> The court considers the evidence, the testimony and the exhibits and certainly from Ms. Lawson's standpoint looking at the text message exchange there this court can in no way endorse . . . the language and modes of communication.

---

[4] Lawson also argues, for the first time on appeal, that Krull's threats constituted criminal harassment. RCW 9A.46.020(1). We decline to consider this argument. RAP 2.5(a).

. . . .

The question is whether legally it rises to the level of duress. This court cannot find that it does rise to the level of duress.

In essence what we have is a situation where a tenant was already in breach of the agreement and as unpleasant as the negotiation process appears to have been Mr. Krull gave up and relied upon remedies that he might have been able to avail himself of because of the non-payment or late payment of rent.

He basically negotiated and said I'm not putting up with this—you have to sign this to turn back the due date for the rental or else I'm going to go forward with my legal remedies.

That was not a threat in the sense of physical harm or wrongful conduct. It was simply a—a threat to carry out what he believed his legal rights to be under Washington Landlord/Tenant law—albeit sprinkled with some other things which refer to blacklisting, excluding somebody from the rental market which again I think are highly inappropriate and highly suspect and in theory could be addressed in some other form.

But this court cannot deny the eviction request simply on that basis.

Report of Proceedings at 70-71.

The question of whether there is duress is one of fact to be determined from all of the surrounding circumstances and the personal characteristics of the parties involved. *State ex rel. Bradford v. King County*, 197 Wash. 393, 400, 85 P.2d 670 (1938); *see also Retail Clerks Health & Welfare Tr. Funds v. Shopland Supermarket, Inc.*, 96 Wn.2d 939, 945, 640 P.2d 1051 (1982) (circumstances provided insufficient evidence to establish claim of duress). A party seeking to rescind a contract based on duress has the burden of proving it by clear, cogent, and convincing evidence. *In re Welfare of J.N.*, 123 Wn. App. 564, 576-77, 95 P.3d 414 (2004); 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 301.10, cmt at 224 (6th ed. 2012) (WPI).

We review a trial court's finding that there was no duress for substantial evidence. *J.N.,* 123 Wn. App. at 577; *Pleuss v. City of Seattle*, 8 Wn. App. 133, 137, 504 P.2d 1191 (1972). If this standard is satisfied, we will not substitute our judgment for that of the trial court, even though we might have resolved the factual dispute differently. *Sunnyside Valley Irrigation Dist. v. Dickie*,

149 Wn.2d 873, 879-80, 73 P.3d 369 (2003); *Keever & Assoc., Inc. v. Randall*, 129 Wn. App. 733, 737, 119 P.3d 926 (2005). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970, *abrogated in part on other grounds by Crawford v. Wash.*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); *Morse v. Antonellis*, 149 Wn.2d 572, 574, 70 P.3d 125 (2003).

To establish duress or coercion sufficient to repudiate a signature to a contract, a party must prove that the duress resulted from the other's wrongful or oppressive conduct. *Retail Clerks Health & Welfare Tr. Fund*, 96 Wn.2d at 944. The mere fact that a contract is entered into under stress or pecuniary necessity is insufficient. *Retail Clerks Health & Welfare Tr. Fund*, 96 Wn.2d at 944. Circumstances must demonstrate that a person was deprived of his free will at the time he entered into the agreement to sustain a claim of duress. *Retail Clerks Health & Welfare Tr. Fund*, 96 Wn.2d at 944-45; *see also* RESTATEMENT (SECOND) OF CONTRACTS, § 175, cmt. b (1981) (even if improper, threat does not amount to duress if the victim has a reasonable alternative to succumbing and fails to take advantage of it).

"[A] mere threat to exercise a legal right made in good faith is neither duress nor coercion in law." *Pleuss*, 8 Wn. App. at 137; *see also Gibson v. Thisius*, 16 Wn.2d 693, 696, 134 P.2d 713 (1943) (threat made in good faith to resort to legal process does not constitute duress); WPI 301.10, note on use at 222 (if applicable, court should instruct jury that a threat to exercise a legal right, made in good faith, is not improper). A threat may be said to be made in good faith if made in the honest belief that valid grounds exist to justify the action threatened. *Pleuss*, 8 Wn. App. at 137-38.

Krull's threat to evict Lawson if she did not agree to the lease addendum did not constitute duress, as he had valid grounds to justify that threatened action. While he had no legal right to threaten her with homelessness or blacklisting, substantial evidence supports the trial court's finding that these additional threats did not constitute duress. Lawson's complaint that she had no money to move elsewhere does not show that Krull's threats overcame her will, particularly when she was able to obtain a loan to pay the rent and penalties she owed at the end of May. Among other options, Lawson could have vacated the property instead of signing the lease addendum, thus leaving her with a reasonable alternative to signing.

As stated, the existence of duress is a factual determination based on an evaluation of the surrounding circumstances and the parties' characteristics. The trial court considered the evidence and found no duress. It is not our job to second guess the trial court.[5] While we might have resolved the issue differently, substantial evidence supports the finding that Krull did not engage in duress sufficient to render the lease addendum voidable.

B.      Notarization

Lawson also argues that the addendum was improperly notarized. Her signature (dated May 30) and Krull's signature (dated June 2) are on a single page of the addendum that contains the notarization of Krull's signature (dated June 2). A following page contains the notarization of Lawson's signature and is dated May 30. Lawson argued during trial that the notarization of her signature was fraudulent, but the trial court reasoned that whether or not the addendum was properly notarized was immaterial. As the trial court recognized, notarization of the signatures

---

[5] It is clear that the trial court listened to the testimony and reviewed the exhibits. It determined the weight to be given to the witnesses and the evidence. RP 70-71. The dissent seemingly is reweighing the evidence from a cold record and arriving at a conclusion different from the trial court.

was not necessary to validate the one-year lease addendum. RCW 59.04.010; *Sound Built Homes, Inc. v. Windermere Real Estate/S., Inc.*, 118 Wn. App. 617, 627 n.19, 72 P.3d 788 (2003). Accordingly, we reject Lawson's challenges to the validity of the lease addendum.

III.     DECEMBER RENTAL PAYMENT

Lawson also argues that the evidence was insufficient to show that she did not pay the December rent. This is a challenge to the trial court's finding of fact that she did not pay the December rent or a late fee for that month. We review this finding for substantial evidence. *Harris*, 133 Wn. App. at 137.

At trial, Lawson did not dispute that she did not pay December rent to the Krulls and admitted that she had not paid it into the court registry. Lawson testified that she would be current in her rent under the previous lease agreement because her previous late fees could be applied to her outstanding rental obligation. During its oral ruling, the trial court observed that the parties agreed that Lawson did not pay rent on December 1 or within three days following the three-day notice.

Lawson now contends that she did pay the December rent, and she cites illegible bank statements attached to an exhibit to support this contention. We hold that substantial evidence supports the trial court's finding that Lawson defaulted on her December rent.

IV.     ATTORNEY FEES ON APPEAL

Both parties request an award of attorney fees and costs on appeal. The Krulls argue that they are entitled to fees under RCW 4.84.330. We review de novo whether a statute authorizes attorney fees. *Estep v. Hamilton*, 148 Wn. App. 246, 259, 201 P.3d 331 (2008).

RCW 4.84.330 states the rule for attorney fees in any action on a contract:

> In any action on a contract . . . where such contract or lease specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such

> contract or lease, shall be awarded to one of the parties, the prevailing party. . . shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements.

Clause 19 of the lease agreement states that in an action to enforce the agreement, the prevailing party shall recover reasonable attorney fees and costs. The trial court awarded the Krulls attorney fees and costs below.

Where a statute authorizes fees to the prevailing party, they are available on appeal as well as in the trial court. *Eagle Point Condo. Owners Ass'n v. Coy*, 102 Wn. App. 697, 716, 9 P.3d 898 (2000). The Krulls are entitled to an award of attorney fees on appeal, subject to their compliance with RAP 18.1. We deny Lawson's request for fees, costs, and damages.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

I concur:

_____
Maxa, J.

BJORGEN, A.C.J. (dissenting) — The record, in my view, lacks substantial evidence to support the trial court's finding that Daniel Krull's threats in obtaining the lease addendum did not rise to the level of duress. For that reason, I would reverse.

As stated in the majority's clear survey of legal principles, a party seeking rescission based on duress must prove by clear, cogent, and convincing evidence that the duress resulted from the other's wrongful or oppressive conduct. *Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc.*, 96 Wn.2d 939, 944, 640 P.2d 1051 (1982); *In re Welfare of J.N.*, 123 Wn. App. 564, 576-77, 95 P.3d 414 (2004). The mere fact that a contract is entered into under stress or pecuniary necessity is insufficient, *Retail Clerks*, 96 Wn.2d at 944, as is "the mere threat to exercise a legal right made in good faith." *Pleuss v. City of Seattle*, 8 Wn. App. 133, 137, 504 P.2d 1191 (1972).

Krull's intimidation went well beyond a good faith threat to exercise any legal right, such as eviction. Instead, according to Aiko Lawson's response to eviction summons, presented as a sworn declaration, Krull stated that "unless the Plaintiff agreed to the lease revision, he would 'blacklist' her at every rental property/agency within Vancouver." Clerk's Papers (CP) at 24-25. Krull stated further that "unless the Plaintiff agreed to the lease revision, he would make her life miserable, have her evicted and make her broke and homeless," concluding, "It is my way or the highway." CP at 25. Lawson stated that she "felt she had no choice but to sign the new lease because even if she tried to fight it in court, the Plaintiff had made it clear he would destroy her outside of the court in regards to the ability to obtain another rental." CP at 25.

Lawson's declaration also contains an attachment C, which she characterizes as "[a] synopsis/recollection of some of the conversations between the Plaintiff and Defendant." CP at

13

25. Those include the following statements by Krull to Lawson on May 15, 16, 17 and 19, 2014, apparently part of text message exchanges between the two.

> You don't tell me what to do!! It is my way or the highway. If you don't accept redoing the lease agreement to what I want I will make sure you are homeless.
>
> I will blackball you to every housing unit in Vancouver. No one will ever rent to you again!!!
>
> You can try and fight me Aiko but I will win and I will evict you and make it impossible to get another place to rent!!
>
> I don't care what is hard for you or not. I want it changed and you will either do what I say or you can just start packing. Either way I am going to ruin you!!!!!!!!
>
> I will start eviction proceedings against you and make sure you are blacklisted on every rental agency in Vancouver!!!!
>
> You either do what I tell you and sign a new lease or you can try to fight the eviction (but you will lose) and if you fight it I will make it impossible for you to rent anywhere else.
>
> I can do whatever I f[******] please Aiko!! You will be out and you will find it impossible to rent anywhere else! Sign a new lease or you are out!!

CP at 31-34.

While the law may not provide a remedy against every bully, it does allow rescission of an agreement for duress when intimidation rises to a level that deprives the target of her free will. *See Retail Clerks*, 96 Wn.2d at 944-45. Threats by a landlord to blacklist the tenant with every rental agency in the city, to make sure she is homeless, and to ruin her if she does not sign the new lease are not merely boorish, but are directly coercive. Their intimidation was heightened by Lawson's own financial straits and loss of income due to pneumonia. Although stress or pecuniary necessity may be insufficient to establish duress, *see Retail Clerks*, 96 Wn.2d at 944, it is surely one of the surrounding circumstances and personal characteristics that may be

14

considered. *See State ex rel. Bradford v. King County*, 197 Wash. 393, 400-01, 85 P.2d 670 (1938). Krull's threats constituted wrongful and oppressive conduct that effectively deprived Lawson of her free will in the matter. Under the principles set out in the majority opinion, those threats created duress.

The only real evidence to the contrary lies in the inference that Lawson was not forced to sign the addendum, because she always had the option to move out. Krull's threats, however, were that if she did not sign, he would blacklist her and make her homeless. Not signing and instead moving out was hardly a realistic option, then, because Krull's statements could reasonably be interpreted to threaten homelessness if she did so. More to the point, if a tenant's ability to move out removes the duress from threats as coercive as these, then little will remain of the defense of duress in the landlord tenant setting. To preserve that defense, a tenant's right to hazard the streets cannot neutralize this sort of coercion.

The majority also notes that Lawson was able to obtain a loan to pay rent and penalties she owed at the end of May. The ability to obtain a loan for one month, however, says nothing about her ability to obtain future needed loans. In addition, the option of descending further into debt to meet the earlier deadline demanded by Krull hardly removes the coercion accompanying that demand.

Without engaging in the weighing of evidence, the record lacks evidence sufficient to persuade a fair-minded person of the truth of the trial court's finding of no duress. Therefore, the trial court's decision should be reversed.

_____, A.C.J.
BJORGEN, A.C.J.

15